PLEUS, Judge.
The appeal is from a final decree adjudging that a certain piece of property in Palm Beach County, Florida described as Lot 29 of a certain subdivision bearing municipal number 1581 North Ocean Boulevard, Palm Beach, Florida, was not the homestead of Isador Engel at the time of his death and hence passed by his will to his widow.
Plaintiffs below are appellants here and brought suit for a declaratory decree seeking to establish that said property was the homestead. They are the three sons of the testator by a prior marriage and the defendant is their stepmother and the widow of the testator as well as executrix of his last will and sole devisee and legatee thereunder.
The only question necessary for a decision of this cause is whether or not the said property was the homestead of the testator.
It is admitted that the property upon which is located a dwelling house was initially purchased by plaintiffs and that title was taken in the plaintiff Norman Engel; and that thereafter and on December 3, 1947 the testator father purchased the premises taking a deed from Norman. It is likewise admitted without controversy that the domicile of the testator was Palm *141 Beach County, Florida at the time of his death and the facts conclusively shown from the record are .as follows:
1. At the time of the purchase in 1947 the testator and his wife (to whom he had been married for approximately twenty years at the time' of his death) had been customarily spending part of each year prior thereto in Palni Beach but were then residents of Chicago, Illinois living in an apartment there. Following the purchase the customary sojourn was had during the winter seasons usually for the months of December and January.
2. On March 5, 1951 while in West Palm Beach the testator there executed the will involved in which he recited himself as being of both the cities of Palm Beach and of Chicago. He did, however, direct that he be buried in West Palm Beach.
3. On November 1, 1951 the testator sold the lease he had on his Chicago apartment and from then until sometime in December 1951 he and his wife resided in the Belmont Hotel in Chicago, coming to Florida in December of 1951. Following this he made business and pleasure trips to Chicago usually staying at the Belmont Hotel and eventually retired from business —the record indicating this to have taken place sometime in 1952.
4. Upon receiving a statement for dues from his Temple in Chicago for the fiscal year beginning September 1, 1951 he wrote as follows:
“ ‘Very sorry’ will not be here as I expect to make home in Fla. and will join Temple there.”
This statement had been addressed to his Chicago address.
5. On December 10, 1952 testator obtained his Florida automobile driver’s license for the year 1953 giving as his address the same property above mentioned; and on October 5, 1953 a renewal driver’s license for the year 1954 was obtained with the same address being shown.
6. On February 10, 1953 testator registered to vote in Palm Beach County, the registration certificate showing that he was a freeholder and that his address was 1581 North Ocean Blvd. In this registration certificate he stated under oath that he had been a resident of Palm Beach County for six months and of the State of Florida for twelve months.
7. On February 12, 1953 testator filed an application and proof of right to tax exemption for the exemption of the particular property involved on account of its being a homestead and in said application he stated that “I reside on the above property and in good faith make the same my permanent home and do hereby declare that I am a bona fide legal resident of the State of Florida.” He also wrote as his permanent address the house number of the property involved.
8. On March 24, 1953 testator wrote a letter to a club in Chicago resigning therefrom as of March 31 of that year and stated in said letter “The reason for this is we will make our permanent (sic) home in Palm Beach Fla. so if I have anything coming you can send check to 1581 No. Ocean Blvd. Palm Beach Fla. * * *”
9. On November 26, 1953 the testator died in the house located on the premises involved and the certificate of death by the attending physician under date of November 27, 1953 showing defendant-appellant widow as the source of the information stated the deceased’s usual residence as 1518 North Ocean Blvd., Palm Beach, Florida and that testator was buried in Woodlawn Cemetery, West Palm Beach, Florida on November 30, 1953.
10. On December 18, 1953 petition for probate of the will was filed in the County Judge’s Court of Palm Beach County by the defendant widow under oath specifically stating that the testator had died while a resident and citizen of Palm Beach County, Florida and stating petitioner’s residence as 1581 North Ocean Boulevard, Palm Beach, Florida.
*142 11. On September 1, 1954, defendant widow as executrix filed a report and inventory on testator’s estate sworn to by her showing the value of the “furniture and furnishings and personal property located in the home place at 1581 N. Ocean Boulevard, Palm Beach, Fla.” and likewise listing as real ' estate the “Home place located at 1581 N. Ocean Blvd. and described as follows: (legal description).”
12. On January 23, 1956 when defendant widow testified, she was still residing in the same home as her place of abode.
Defendant put in evidence as bearing upon the intention of the testator certain conversations to the effect that the testator had only, acquired the property in the first place to assist his sons; that it was too large a property for him and his wife to handle; that he had decided to obtain and had actually taken steps to obtain a smaller property primarily of an income producing nature; and finally, the testimony of the widow attempting to show a lack of intent to make the premises their permanent home. We disregard the latter in the face of her positive statements and actions since the death.
Under the provisions of Article 10, Sections 1 and 2 of the Constitution of Florida, F.S.A., and under Sections 731.05(1) and 731.27, Florida Statutes 1955, F.S.A., the applicable decisions and the proper construction to be placed thereon, was the property involved the homestead of the testator at the time of his death ?
We have concluded that it was and that the court below erred in holding otherwise. Such holding was based upon a misapplication of the requirement of “permancy” in order for the attributes of a homestead to attach. Such permanency does not mean, any more than it does in our concept of domicile, that there must be an avowed and conclusive intent to forever remain in a given place of abode, eternally or even “until death do us part”. The only proper concept of permanency when used in this sense means the presence of the intention to reside at that particular place for an indefinite period of time. Dissatisfaction with one’s original bargain in purchasing and vague and floating and conditional possibilities of acquiring another place of abode are not sufficient to overcome the irresistible conclusion that must be drawn from the actual overt acts above detailed. Too much reliance was placed by the court below on the use of the word “will” in the letter written by the testator upon resigning from his club March 24, 1953. The use of this word connotes-present volition and determination and not futurity. By the time this letter was written his domicile and residence and homestead were already established facts. Nothing thereafter occurred to alter the fact of this property being his homestead at the time of his death the next November.
We apply the same criteria as would have been applied if a creditor had sought a forced sale of the premises involved and the testator had asserted his homestead exemption. No court would ever have held that it was otherwise than exempt.
This holding we submit is consonant with the decisions applicable from the landmark case of Smith v. Croom, 1857, 7 Fla. 81 to and including the most recent expression of the Supreme Court in Bloomfield v. City of St. Petersburg Beach, Fla.1955, 82 So.2d 364. Throughout these decisions whether speaking of domicile or residence and whether treating them as synonymous or not, the basic thought is that a man’s home is where he makes it and that he intends to-make it where he in fact does.
Neither the mere expression of an unrealized desire for the future nor the voicing of regret for the past nor the initial motive actuating the original acquisition can alter the legal consequences inevitably attendant upon the established facts.
Were we to decide otherwise “Our Legal' Chameleon”,[1] already unsteady on its- *143 present perch and capable of changing color all too often would be given the additional attribute of oscillating hereafter with each doubtful ascertainment of "intent” based upon all the hazards and uncertainties inherent in attempting to read into a dead man’s mind a mental state wholly inconsistent with his affirmative acts and deeds.
In view of this holding we deem it unnecessary to pass upon the assignments of error resting upon the admissibility of certain testimony under the so called Dead Man’s Statute, Section 90.05 Florida Statutes 1955, F.S.A.
We therefore reverse the cause with directions to enter a final decree in favor of the plaintiffs below adjudging the property involved to have been the homestead of the testator at the time of his death with the consequent result the plaintiffs own the remainder subject to the life interest of the defendant widow.
Reversed.
KANNER, C. J., and ALLEN, J., concur.

. 2 Fla.Law Review 12-84, 219-242, 346-390.