213 So.2d 454 (1968)
Kathleen LaGASSE, Appellant,
v.
AETNA INSURANCE COMPANY, Appellee.
No. 67-305.
District Court of Appeal of Florida. Second District.
August 7, 1968.
Rehearing Denied September 10, 1968.
*455 Charles J. Cheves, Jr., of Wotitzky, Wotitzky & Schoonover, Punta Gorda; and Icard, Merrill, Cullis, Timm & Holroyd, Sarasota, for appellant.
Richard V. Harrison, Sarasota, for appellee.
PIERCE, Judge.
This is an appeal from a final decree, ruling that certain realty owned by appellant Kathleen LaGasse, defendant below, and claimed by her as homestead was subject to a judgment lien and writ of execution held by appellee-plaintiff.
In the late 1920's and early 1930's, Everette C. Thompson, defendant's father, purchased the realty in question, which encompassed less than one-half acre located on 40th Street in Sarasota. Defendant, an only child, lived there with her parents until her marriage at age 24 to Henry LaGasse. After her marriage she and her husband and daughter resided on Clark Road in Sarasota.
Defendant's husband and his two brothers were engaged in the construction business under the corporate name of LaGasse Bros., Inc., of which defendant's husband was president. In connection with certain construction projects LaGasse Bros. furnished bonds on which plaintiff, Aetna, was surety. In connection with said bonds Aetna exacted an indemnity agreement signed by defendant's husband, both individually and as president of LaGasse Bros., by the other two LaGasse brothers and their wives, and also by defendant. LaGasse Bros. subsequently defaulted on the projects, and Aetna sued on the indemnity agreement, recovering a judgment of $91,500 against all the indemnitors except defendant's husband. This judgment was recorded on June 30, 1961. A writ of execution was issued on July 7, 1961, and was filed in the local Sheriff's office on July 10, 1961.
In January of 1964, defendant's husband deserted defendant and their daughter. He made support payments of $20 per week and also made sporadic payments on a first mortgage on the Clark Road property, but he made no payments on a second mortgage. By January of 1965, both mortgages were substantially in default. Defendant had in the meantime taken a job as a waitress.
In April, 1965, defendant's father died, leaving defendant's mother with a life estate in the 40th Street property and a vested remainder in fee in defendant. Defendant returned to the 40th Street home to care for her mother, who had become an invalid. She made frequent trips to the Clark Road house for the purpose of selling and removing furniture and personal effects. The Clark Road house was eventually lost through foreclosure. Defendant's mother died on September 8, 1965, at which time *456 defendant's vested remainder in the 40th Street property ripened into fee ownership. Defendant's parents had maintained such property as their residence until their death, and before their death defendant had filed for homestead exemption for tax purposes on the Clark Road property.
On September 24, 1965, plaintiff instructed the Sheriff to levy upon defendant's interest in the 40th Street property. Notice of levy was served on September 27. On October 8, 1965, defendant filed a complaint seeking an injunction against the sale of her house. She voluntarily dismissed such suit on October 27, and on the same day filed a claim of homestead exemption at the sheriff's office. On December 1, 1965, plaintiff instituted this suit seeking a declaration that its judgment lien was superior in right to defendant's claim of homestead exemption. From the final decree rendered in favor of plaintiff and directing the sheriff to complete the sale under the levy previously made, defendant filed her notice of appeal. She assigns as error inter alia that portion of the final decree which holds that "* * * any Homestead Exemption or other claims of Kathleen LaGasse therein are inferior and subject to the rights of Aetna Insurance Company". We agree with her contention and reverse the decree appealed.
Both parties to this cause seem to be bent upon evolving certain complex questions of both law and fact out of what we think is a relatively simple issue. The whole controversy here is governed by the determination of precedence as between a constitutional homestead and a judgment lien. But first we will dispose of some of the legal "straw men" which have seemingly obscured the main point.
1. Plaintiff contends there is dispute as to the time Mrs. LaGasse actually established residence at the 40th Street property. Defendant's father died April 7, 1965, and her mother died 5 months later in September. Whether defendant could claim residence from the latter part of April or early May, as is amply supported by the evidence, is immaterial. The rule laid down in Collins v. Collins, 1942, 150 Fla. 374, 7 So.2d 443, is that occupancy within a reasonable time under all the circumstances is sufficient. Certainly Kathleen's occupancy with her 14 year old daughter within a few weeks after her father's death qualified her as a bona fide resident.
2. The fact that Kathleen filed for homestead tax emption on the Clark Road house is not to be construed as an attempt to claim two homesteads simultaneously. Homestead for tax purposes and homestead for purposes of exemption from forced sale, although related because both are part of the overall scheme of providing for preservation of the family dwelling, are not synonymous. Whether through choice or lack of it, by June 1965 Kathleen had abandoned the Clark Road property.
3. Plaintiff dwells at length on defendant's alleged lack of intent to make the 40th Street residence her permanent place of abode. In Engel v. Engel, Fla. App. 1957, 97 So.2d 140, we find:
"[t]he only proper concept of permanency when used in this sense means the presence of the intention to reside at that particular place for an indefinite period of time. * * * [T]he basic thought is that a man's home is where he makes it and that he intends to make it where he in fact does."
Certain it is that Kathleen LaGasse was making her home on the subject property and had asserted no intention to depart therefrom.
4. The fact that Kathleen, at the time of the attempted levy, made a statement to the deputy sheriff indicating doubt as to her ownership is not conclusive as to her lack of status as a homesteader. *457 Ignorance of the law is no excuse for its violation, but it does not follow that one's lack of knowledge of his rights will serve to deprive him of those rights. It is hardly surprising that laymen do not understand all the legal aspects of homestead when many lawyers fail to grasp all the ramifications of "Our Legal Chameleon".[1]
5. That Kathleen LaGasse did not file a declaration of intent to make the 40th Street property her homestead prior to the attempted levy is immaterial. F.S. § 222.02 F.S.A. providing for designation of homestead after levy specifically says that such designation may be made "at any time before the day appointed for the sale thereof, * * *".
6. Last but not least, the overshadowing bugaboo seemingly troubling the parties is whether the recorded judgment lien attached to Kathleen's remainder interest, after her father's death and while her mother was still living. This is wholly immaterial. The Court is not dealing with lien of a judgment against a prospective title.
All of which gets us down to the real crux of the case, which is whether or not real property which has been homesteaded by the head of a family under Article X, §§ 1 to 6, F.S.A., and statutes enacted pursuant thereto, is amenable to forced levy and sale to satisfy a judgment and where the property had no connection with the debt or obligation upon which the judgment was originally procured.
After Kathleen's mother died, the judgment creditor Aetna procured execution to be levied against the 40th Street home property wherein Kathleen had been living as the head of a family for several months. Kathleen thereupon declared her homestead rights to be exempt from forced sale by filing the requisite statutory affidavit with the sheriff. These are the simple basic facts which the Court has before it.
And we do not have to pause to speculate upon what would have happened if the judgment had been levied on Kathleen's remainder interest in the property before the mother died or even before the father died. Here we have another simple fact: it just didn't happen. So the Court is faced with a "condition and not a theory", the condition being that no prerequisite levy to a forced sale was made or attempted until after her mother died and Kathleen became the owner of the fee to the property. The theory is that if such levy and sale had been made before her mother's death Kathleen might have lost her remainder interest which might have carried on through to her present title in fee. The condition is that nothing was done by Aetna to enforce the judgment until after the mother's death.
The organic right to an exempt homestead has its source in Article X, § 1, which ordains: "A homestead * * * owned by the head of a family residing in this State * * * shall be exempt from forced sale under process of any court * * * and no judgment * * * or execution shall be a lien upon exempted property * * *".
The original judgment against Kathleen in the case sub judice derived from her accommodation execution of an indemnity agreement to Aetna in connection with Aetna's suretyship on certain contractors' bonds. Kathleen's husband and his two brothers were in business as a construction corporation and had to post bonds as required by certain construction contracts. Aetna was surety thereon and exacted indemnity agreements, not only from all three brothers but their wives as well, among whom was Kathleen, who had nothing to do with the business and knew nothing about the corporate transactions. When her husband's company defaulted, Aetna sued all indemnitors, resulting in the instant judgment against Kathleen, along with the other indemnitors.
*458 On September 27, 1965, nineteen days after Kathleen's mother died, the sheriff at Aetna's direction levied on the 40th Street home. Kathleen had not theretofore designated the property as her homestead, but did so immediately after, by, on October 27, filing sworn notice with the sheriff. This was in accordance with F.S. Section 222.02, F.S.A., which provides inter alia as follows:
"222.02 Designation of homestead after the levy
Whenever a levy is made upon the lands * * * of such head of a family whose homestead has not been set apart * * * such person * * * may in writing notify the officer making such levy, by notice under oath * * * at any time before the day appointed for the sale thereof, of what he regards as his homestead, with a description thereof * * *".
Thus, she availed herself "of the benefit of the provisions of the constitution and laws exempting property as a homestead from forced sale under any process of law", quoting from F.S. § 222.01, F.S.A.
At that time she held a full fee simple title to the property. At that time she was a bona fide resident in the home on the property. And there can be no doubt, from the record here, that at that time she was the "head of a family". Her 14 year old daughter Diane was living there with her, entirely dependent upon her mother for support and maintenance, Kathleen working as a waitress. This qualified Kathleen under a long line of Florida cases that, "to constitute the `head of a family' entitled to exemption of homestead from sale under execution, there must be at least two persons who live together in relation of one family, and one of them must be the head of that family". Brown v. Hutch, Fla.App. 1963, 156 So.2d 683; In re: Kionka's Estate, Fla.App. 1959, 113 So.2d 603; Moorhead v. Yongue, 1938, 134 Fla. 135, 183 So. 804, 118 A.L.R. 1377. And being a married woman was, in and of itself, no bar to her, because "circumstances may constitute a married woman the head of the family, entitled to the benefits of the homestead exemption, Section 1, Article 10, Constitution of Florida". Jones v. Federal Farm Mtg. Corporation, 1939, 138 Fla. 65, 188 So. 804. Typical instance of this is where a wife has been deserted by her husband leaving her with a dependent child or children, such as here. Anderson v. Anderson, Fla. 1950, 44 So.2d 652.
Actually Kathleen was the head of a family before her mother died. After the father's death Kathleen ran the 40th Street household. Her mother had terminal cancer of the spine and was completely disabled. Kathleen bought the groceries and paid the bills, mostly with her own meager earnings.
Kathleen's father originally built the house and moved his family into it when Kathleen was about two years old. She lived there until she married at age 24, and later moved back in when she lost her home on Clark Road and her parents were both physically helpless.
In Milton v. Milton, 1912, 63 Fla. 533, 58 So. 718, the Supreme Court, speaking through Chief Justice Whitfield, upheld an exemption of a homestead from forced sale under a judgment upon facts not nearly as strong as those existing here. In that case, William Milton's widowed mother died at her home owned by her in Jackson county, leaving several children as her heirs. William Milton, one of her sons, was living in Washington county when his mother died, but a month later he with his family moved into the house wherein his mother died, and claimed it as his homestead. He claimed only a one-fourth interest in the property as one of the heirs, but two months after moving in he obtained an injunction against an execution sale of his interest in the land to satisfy judgments obtained against him prior to *459 his mother's death. Upholding the injunction, the Supreme Court held:
"When Mrs. Webster [the mother] died leaving to her heirs as such the land on which she resided, the heirs had a right to occupy the land inherited by them and to claim it as their homestead within the limitations prescribed by the Constitution. And it was not necessary for the heirs or any of them to be in actual occupancy of the land at the death of the mother to entitle them to occupy and claim the land as their homestead. An occupancy of the land as a homestead by an heir within a reasonable time, under all the circumstances, will prevent the forced sale under a judgment against the occupying heir of his interest in the land that is lawfully and in good faith occupied and claimed by him as his homestead. * * * Under the circumstances of this case, even if the judgments against William Milton became a lien upon his interest in the lands, they were after his occupancy by virtue of the Constitution exempt from the forced sale."
The Milton case was reviewed in Pasco v. Harley, 1917, 73 Fla. 819, 75 So. 30, wherein the facts were sufficiently different to create a distinction from the rule laid down in Milton, upon considerations not applicable here. Pasco does provide, however, additional support for our view that Kathleen in the instant case is entitled to exemption, by holding that where "the homestead exemption right attached at least concurrently with the right of the inheritance and the judgment lien on the inherited property, * * * the homestead right [has] precedence". By this holding Kathleen is clearly entitled to exemption because, at the instant of her mother's death, she became sole owner of the fee and, coupled with her bona fide residence on the property and being head of a family, her unquestioned right of homestead exemption accrued. This would at least be equal in point of time with the lien of Aetna's judgment, because the judgment could not have been a lien on the property itself until title vested in Kathleen, the judgment debtor.
The Supreme Court has just recently, in Quigley v. Kennedy & Ely Insurance, Inc., Fla. 1968, 207 So.2d 431, reiterated the rule that 
"* * * if the homestead right and the lien attach simultaneously, as in the case of * * * inheritance of land by a judgment debtor, priority is * * * accorded to the claimant of the homestead right." Citing 26 Am.Jur., Homesteads, § 101, p. 64.
From Milton in 1912 on down to Quigley in 1968, the Florida Courts have unbrokenly held that "organic and statutory provisions relating to homestead exemptions should be liberally construed in the interest of the family home".
The theory of homestead has been expressed as a matter of public policy to preserve a home for the family and to protect the family even from the just demands of creditors. Hill v. First National Bank, 1920, 79 Fla. 391, 84 So. 190, 20 A.L.R. 270. In the absence of fraudulent conduct on the part of the debtor, our Courts have followed and inplemented this broad and beneficent rule in the interest of the public weal.
In accordance with the views expressed herein, the decree appealed is reversed and the cause remanded for proceedings consistent herewith.
LILES, C.J., and ALLEN, J., concur.
NOTES
[1] 2 Fla.Law Review 12-84, 219-242, 346-390.