381 So.2d 1344 (1980)
A.D. BESSEMER, Etc., et al., Petitioners,
v.
Robert B. GERSTEN, et Ux., Respondents.
No. 52264.
Supreme Court of Florida.
February 28, 1980.
Rehearing Denied April 25, 1980.
*1345 Thomas M. Ervin, Jr. and E.C. Deeno Kitchen of Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee and John E. Aurelius of James, Bielejeski, Lunny & Aurelius, Fort Lauderdale, for petitioners.
Rod Tennyson of Ombres, Powell, Tennyson & St. John, West Palm Beach, for respondents.
Jim Smith, Atty. Gen. and Thomas M. Pflaum, Asst. Atty. Gen., Tallahassee, for amicus curiae.

ON REHEARING
BOYD, Justice.
This Court's opinion of February 8, 1979 is withdrawn.
This cause is before the Court on petition for certiorari supported by the district court's certification that its decision passed upon a question of great public interest. Gersten v. Bessemer, 352 So.2d 68 (Fla. 4th DCA 1977). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
The issues are whether a developer can impose upon lots in a subdivision encumbrances creating affirmative duties to make cash payments for recreational purposes, to be enforced against a buyer through the mechanism of a foreclosable lien, and whether, where the only act of the buyer showing intent to pledge the property as security is the acceptance of a deed embodying the covenant and lien provisions, the lien arising from nonpayment will prevail over the buyer's homestead right, where homestead attached at the time of the buyer's taking title by deed. We answer these questions in the affirmative.
On February 25, 1969, Robert and Dina Gersten contracted with Behring Corporation for the purchase of a residential house and lot in The Mainland of Tamarac Lakes, Tenth Section, a subdivision then being developed by Behring. The purchase and sale agreement contained the following two pertinent provisions: "Purchaser agrees to pay $26.00 (approx.) monthly maintenance and *1346 recreational facility charge to the Seller ... or assigns.... The Seller will supply to the Purchaser a Release of Lien Certificate and Warranty Deed, conveying title free and clear of all encumbrances, except easements, restrictions, reservations, and mortgages, if any."
The first provision above shows an agreement by the Gerstens to pay the recreational facility charge. The second shows that they were put on notice that restrictions of record would not be warranted against by the seller when the time came for conveyance. The purchase and sale agreement did not, however, provide that the duty to pay would be secured by lien.
On January 8, 1970, Behring Corporation filed in the public records a "declaration of restrictions" pertaining to the subdivision in which the lot the Gerstens had agreed to buy is located. Section 8 of this document, entitled "Recreation Land Lease; Liability For; Assignment Lien, Etc.," declared that each lot owner would be responsible for a share of the rent to be paid for a certain described parcel of land upon which the developer planned to construct recreational facilities for the exclusive use of the residents of the subdivision.
The declaration provided that each lot owner's share of the rental obligation would be $10.00 per month, or 1/476 of the total monthly rent of $4760.00. It stated the developer's intention to enter into a long-term lease of the specified land and to pledge to the prospective lessor the right to receive the payments from lot owners as security for the rent. The declaration provided that the monthly rental obligation would commence in the month following the developer's recording of a certificate to the effect that the construction of the recreational facilities had been completed. It was further declared that
each owner hereby agrees that Behring Corporation, its successors or assigns, shall have a lien upon such owner's lot for the aforesaid amount of $10.00 per month until such amount is paid, and that such lien, where the same remains unpaid for a period of thirty days or more, may be foreclosed in equity in the same manner as is provided for the foreclosure of mortgages upon real property.
Finally, section 8 of the declaration stated that its provisions "shall be considered and construed as covenant restrictions, reservations and servitudes running with the land."
On April 9, 1970, the contemplated lease of the land described as the recreation land in the declaration of restrictions was entered into and recorded. The parties to the lease were July Investment Corporation as lessor and Behring Corporation as lessee. The lease restricted the use of the premises to the recreational purposes of the subdivision. Paragraph 10 of the lease, entitled "Assignment of Lien Rights," gave the lessor the right, as security for the payment of rent, to enforce the liens which Behring Corporation "may acquire by reason of the terms ... of Paragraph 8 of . . [the] Declaration of Restrictions." Thus it was envisioned that the lessor of the recreation land could apply any sums received through enforcement of the liens against the lot owners' property to the rent owed by Behring under the lease. But Behring Corporation reserved to itself the right to enforce the liens also.
On August 26, 1970, the developer recorded a certificate to the effect that the planned recreational facilities had been constructed. Then, on November 27, 1970, the developer executed and delivered, and the Gerstens accepted, a deed conveying to them the house and lot which they had contracted to purchase.
On December 11, 1975, the executor and trustees of the Estate of Mary A. Bessemer, as successors in interest to the Behring Corporation, brought suit to foreclose the lien against the Gerstens' property for nonpayment of their share of the recreation land rent in the amount of $52.91.
The defendants responded with a motion to dismiss. They argued that since the developer, as owner of the lot in question, was not obligated to make payments to itself prior to the time when the lot was conveyed to the Gerstens, the notion of the lien as a preexisting encumbrance is conceptually *1347 faulty. Although the buyers agreed to pay the recreation facility charge and had notice of this encumbrance through the declaration of restrictions, yet the lien, it was argued, was only to arise, and could only arise, upon nonpayment. Therefore the lien came into existence only after the Gerstens had taken possession of the premises as their homestead. The Gerstens argued further that the developer had not alleged facts showing that the lien should nevertheless be enforceable on the ground that it was an obligation "contracted for the purchase, improvement or repair" of the homestead property. Art. X, § 4, Fla. Const. Following the denial of their motion to dismiss, the defendants filed an answer which did not dispute the facts alleged showing constructive notice of the affirmative covenant and lien. The trial court entered a final judgment of foreclosure.
The district court of appeal reversed. It correctly stated that liens on real property can be created only by contract and by operation of law. It found that there was no mention of a lien in the contract for purchase and sale, so the agreement there could have given rise to no lien. It held that the declaration of restrictions could not have created a lien because of its unilateral nature. It declined to find that the circumstances justified the imposition of an equitable lien. The court found, rather, that a lien was created contractually when the purchasers accepted the deed incorporating by reference the declaration of restrictions. Thus the court concluded that the lien came into existence at the time of the closing. But since the homestead status of the premises was established at that time also, it was held that the lien could not be enforced.[1]
A developer, in carrying out a uniform plan of development for a residential subdivision, may arrange for the provision of services to the subdivision or for the maintenance of facilities devoted to common use, and may bind the purchasers of homes there to pay for them.[2] In this case, all of the elements of an affirmative covenant running with the land have been established.[3] Of course, we are not directly *1348 concerned with whether the covenant to make the payment runs with the burdened land since the party sought to be charged is the actual covenantor.[4]
The respondents do not dispute their promise to pay the recreational facility charge, but argue that there is no enforceable lien. There was no agreement on their part, they contend, manifesting an intent to pledge or charge their property as security for the obligation. The district court held that a lien arose at the time the respondents took title, based on their actual or constructive notice of the lien provision in the declaration of restrictions. The petitioners argue that the lien was created by the filing of the declaration of restrictions, that it was in existence as an encumbrance on the property at the time of the conveyance, and that the respondents took title subject to the lien. The petitioners argue in the alternative that if, as the district court held, the lien came into existence at the time of the conveyance, its existence relates back to the time of the filing of the declaration of restrictions, so that it attached to the ownership interest prior to the creation of homestead status.
We hold that the respondents, in accepting the deed with actual or constructive notice of the lien provision of the declaration of restrictions,[5] manifested the intent to let the real property stand as security for the obligation. An affirmative covenant can be entered into by acceptance of a deed embodying same.[6] Thus a valid contractual lien was created at that time.
We hold further that the creation of the lien by acceptance of the deed relates back to the time of the filing of the declaration of restrictions. Thus, with regard to the time of attachment of the lien, this case is to be treated as if the respondents had taken title subject to a valid pre-existing lien. Since the acquisition of homestead status does not defeat prior liens, Porter-Mallard Co. v. Dugger, 117 Fla. 137, 157 So. 429 (1934); Pasco v. Harley, 73 Fla. 819, 75 So. 30 (1917), the lienor's right prevails over the respondents' homestead right.
The decision of the district court of appeal is quashed. This cause is remanded to that court with directions to reinstate the trial court's judgment.
It is so ordered.
ADKINS, OVERTON and ALDERMAN, JJ., concur.
SUNDBERG, J., concurs in result only.
ENGLAND, C.J., dissents.
NOTES
[1] In general, for a lien to be enforceable against homestead property, its existence must be established as of the time the homestead status was acquired. See, e.g., Avila S. Condominium Ass'n v. Kappa Corp., 347 So.2d 599 (Fla. 1977); Quigley v. Kennedy & Ely Ins., Inc., 207 So.2d 431 (Fla. 1968); LaGasse v. Aetna Ins. Co., 213 So.2d 454 (Fla. 2d DCA 1968), rev'd on other grounds, 223 So.2d 727 (Fla. 1969). It is not argued that the purported lien at issue secures an obligation "contracted for the purchase, improvement, or repair" of the homestead property, and therefore the question of whether it comes within the exception provided for by article X, section 4(a), Florida Constitution, is not before us. A lien attaching after the homestead protection has been established can be enforced if it is imposed for fraud or material misrepresentation, Clutter Constr. Corp. v. Clutter, 173 So.2d 761 (Fla. 3d DCA 1965), or if the owner and spouse mortgage the homestead as authorized by article X, section 4(c), Florida Constitution.
[2] Wood v. McElvey, 296 So.2d 102 (Fla. 2d DCA 1974); Sloane v. Dixie Gardens, Inc., 278 So.2d 309 (Fla. 2d DCA 1973); Japanese Gardens Mobile Estates, Inc. v. Hunt, 261 So.2d 193 (Fla. 2d DCA 1972); Henthorn v. Tri Par Land Dev. Corp., 221 So.2d 465 (Fla. 2d DCA 1969).
[3] There was constructive notice, Vetzel v. Brown, 86 So.2d 138 (Fla. 1956), and intent, expressed in the declaration, that the covenant run. See Burdine v. Sewell, 92 Fla. 375, 109 So. 648 (1926); Thompson v. Squibb, 183 So.2d 30 (Fla. 2d DCA 1966). There was privity, of contract and estate, between the covenanting parties, and succession to the interest of the covenantee by the party seeking to enforce. See Vetzel v. Brown; 1 Boyer, Florida Real Estate Transactions § 24.04, at 579-80 (1977). There was a uniform plan of development, Volunteer Security Co. v. Dowl, 159 Fla. 767, 33 So.2d 150 (1947), with benefit to correspond to burden, in that all of the lots in the subdivision were to be charged and benefitted, and the developer bound to provide the facilities. See Osius v. Barton, 109 Fla. 556, 147 So. 862 (1933); Batman v. Creighton, 101 So.2d 587 (Fla. 2d DCA 1958). The covenant enhanced the value or enjoyment of the property, so it touches and concerns the land. Frumkes v. Boyer, 101 So.2d 387 (Fla. 1958); Armstrong v. Seaboard Air Line Ry., 85 Fla. 126, 140, 95 So. 506, 510 (1922) (Whitfield, J., dissenting); Maule Indus., Inc. v. Sheffield Steel Prods., Inc., 105 So.2d 798 (Fla. 3d DCA 1958).

Moreover the courts of Florida will recognize and enforce covenants without regard to the technical legal requirements for covenants running with the land. See Vetzel v. Brown; Hagan v. Sabal Palms, Inc., 186 So.2d 302 (Fla. 2d DCA 1966).
[4] The party seeking to enforce is the successor to the interest of the covenantee, or person to whom the promise to pay was made. Each lot in the subdivision is burdened by the duty to pay, and benefitted both by the existence of the facilities and by the continuing obligation of owners of the other lots, so that the facilities can be kept in operation. Where appropriate, the right to enforce a covenant belongs to the holder of benefitted land. See Vetzel v. Brown, 86 So.2d 138 (Fla. 1956); Volunteer Security Co. v. Dowl, 159 Fla. 767, 33 So.2d 150 (1947). Here, however, it is appropriate for the successor to the interest of the grantor, as the party with the duty of paying rent on the recreation land, to enforce the covenant against a lot owner.
[5] The principle of record notice is fundamental in our law of property. Certain Lands v. Ideal Farms Drainage District, 156 Fla. 774, 778, 24 So.2d 585, 587 (1945); Feemster v. Schurkman, 291 So.2d 622, 626 (Fla. 3d DCA 1974).
[6] It is generally recognized that a covenant running with the land can be created by a deed poll, the acceptance of the deed by the grantee amounting to an agreement on his part to fulfill the conditions of the covenant. In Florida it is standard practice for only the grantor to sign the deed, and, although not specifically decided, it would seem to be beyond question that such a deed would be a satisfactory method of creating a covenant.

1 Boyer, supra note 3, § 24.03, at 574 (footnotes omitted).