HAZOURI, J.
George and Anna Andres (the Andreses) appeal from a Final Judgment granting foreclosure of their home upon suit by Indian Creek Phase III-B Homeowner’s Association, Inc. (Indian Creek). We reverse.
The Andreses were found to have violated Indian Creek’s covenants by erecting a flag pole on their property to fly the American flag. Indian Creek sued the Andreses and prevailed, forcing them to remove the flag pole. Indian Creek now seeks to foreclose upon the Andreses’ home to pay for the attorneys’ fees Indian Creek incurred as a result of its lawsuit. The Andreses assert this basis for foreclosure is preempted by the Florida Constitution which exempts homestead property *183 from a forced sale except in very limited circumstances. We agree.
Article X, section 4 of the Florida Constitution provides:
(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
(1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon ... or if located within a municipality, to the extent of one-half acre of contiguous land ... [.]
Judgments for attorneys’ fees, like other judgments falling outside the specified constitutional exceptions, cannot be enforced by forced sale of homestead property. See Dyer v. Beverly & Tittle, P.A., 111 So.2d 1055, 1059 (Fla. 4th DCA 2001) (reversing judgment of foreclosure for nonpayment of attorney fee judgment); Bakst, Cloyd & Bakst, P.A. v. Cole, 750 So.2d 676, 677 (Fla. 4th DCA 1999) (homestead property not subject to attorney’s charging lien).
Indian Creek seeks to overcome this constitutional shield and foreclose upon the Andreses’ homestead property for attorneys’ fees by arguing that Indian Creek’s documents imposed a lien for attorneys’ fees on the Andreses’ property when the documents were first recorded in 1982. Indian Creek asserts that homestead protection does not come into play because the lien for attorneys’ fees existed before the property acquired homestead status and the Andreses took title to the property subject to the lien. As support, Indian Creek cites to Bessemer v. Gersten, 381 So.2d 1344, 1348 (Fla.1980), for the proposition that a properly recorded covenant which runs with the land may create a lien that dates back to the filing of the covenants.
Bessemer involved the issue of whether a developer’s recreation assessment lien could take priority over a property owner’s homestead right. The developer in Bessemer filed a declaration of restrictions which required purchasers to pay a monthly assessment for use of the development’s recreational facilities. The declaration of restrictions stated that the developer “shall have a lien upon such owner’s lot for the aforesaid amount of $10.00 per month until such amount is paid.... ” Id. at 1346.
In 1970, the Gerstens purchased a house and lot from the developer. In 1975, the developer’s successor in interest brought suit to foreclose a lien against the Gerstens for nonpayment of the recreation assessment. The Gerstens argued that their homestead right had priority because the lien could arise only upon nonpayment and, therefore, the lien did not come into existence until after they had taken possession of the house and lot as their homestead.
The supreme court determined that the Gerstens manifested an intent to let the real property stand as security for the recreation assessment obligation when they accepted the deed with actual or constructive notice of the language in the declaration of restrictions. Id. at 1348. It further determined that'“the creation of the lien by acceptance of the deed relates back to the time of the filing of the declaration of restrictions.” Id. Holding that the case should be treated as if the Ger-stens had taken title subject to a preexisting lien, the court ruled that the develop *184 er’s lien had priority over the Gerstens’ homestead right.
The trial court in the instant case ruled the same circumstances existed here. The lien for the attorneys’ fees originated before the property became a homestead.
The trial court set forth in the final judgment the provisions of the documents that supported its decision as follows:
In 1982, the Declaration of Covenants and Conditions and the Bylaws of Indian Creek Phase III-B were recorded in the public records. In 1988[1] [sic] the property was purchased by the Andres [sic]
[[Image here]]
Excerpts from the Declaration, Bylaws and Deed provide:

Bylaws:

Article XII — Violations and Defaults “In the event of a violation (other than nonpayment of an assessment) by an Owner of any of the provisions of the Declarations, Restrictions, the Articles of Incorporation, these Bylaws or the Rules and Regulations of the Corporation, the Corporation after reasonable notice to cure, not to exceed ten (10) days, shall have all rights and remedies provided by law, including without limitation (and such remedies shall or may be cumulative) the right to sue for damages and the right to injunctive relief. In every such proceeding, the Owner shall be liable for court costs and the Corporation’s reasonable attorneys’ fees including attorneys’ fees on appeals.
If the Corporation elects to enforce its lien by foreclosure, the Owner shall be required to pay a reasonable rent for this Lot during litigation and the Corporation shall be entitled to the appointment of a receiver to collect such rent. A suit to collect unpaid assessments may be prosecuted by the Corporation without waiving the lien securing such unpaid assessments. (Emphasis added.)

Declarations of Covenants and Conditions:

Article V, Section 1 “Creation of a Lien and Personal Obligation of Assessments” provides that:
Declarant, for each Lot owned within the Properties, hereby covenants, and for each Owner by acceptance of a deed therefor, whether or not it shall be so expressed in such deed, is deemed to covenant and agree to pay the Phase III B Association: (1) Annual assessments as hereinafter defined; (2) Special assessments, not otherwise herein contained, against any particular Lot which are established, pursuant to the terms of this Declaration or pursuant to the terms of the Articles of Incorporation and Bylaws of Phase III B Association or of the Community Association; and (3) All excise taxes, if any, which may be imposed on all or any portion of the foregoing by law. All such assessments, together with interest and all costs and expenses of collection, including reasonable attorneys’ fees and appellate attorneys’ fees, shall be a charge on the Lot and shall be a continuing lien upon the property against which each assessment is made. (Emphasis added.)
The trial court also sets forth Article V, Section 11 “Homesteads” which provides that:
[B]y acceptance of a deed thereto, the Owner of each Lot shall agree to waive any and all possible defenses of home *185 stead protection in an action for the foreclosure of the lien for sums assessed pursuant to this Declaration. (Emphasis added.)
The court below held that “[t]his section’s validity is questionable and it was not the basis of Plaintiffs position. The Court does not consider it binding since waivers of this type have been invalidated in lender-borrower settings and have yet to be held valid.”
Reviewing these provisions, it seems apparent that this lien is not an annual assessment and if it is to be considered preexisting it must come under the “special assessment” requirement. Article II of the Articles of Incorporation of Indian Creek provides that “[t]his Corporation is incorporated as a corporation not for profit under the provisions of Chapter 617, Florida Statutes, as amended from time to time.” Chapter 617 has been superseded by Chapter 720 which provides the following definition at section 720.301(1):
(1) “Assessment” or “amenity fee” means a sum or sums of money payable to the association, to the developer or other owner of common areas, or to recreational facilities and other properties serving the parcels by the owners of one or more parcels as authorized in the governing documents, which if not paid by the owner of a parcel, can result in a lien against the parcel.
Thus, an assessment is a sum of money payable to the association by the owner of a parcel as authorized in the governing documents which if not paid can result in a hen.
However, a close reading of Indian Creek’s documents casts doubt on the trial court’s conclusion that the documents provide that the attorneys’ fees are a continuing lien against the property as required by Bessemer.
The Bylaws provide:
Article X — Assessments and Manner of Collection
The Board of Directors has the sole power to and shall from time to time fix and determine the amounts necessary to pay the assessments. Assessments include those expenses described in the Declaration and Restrictions, and any other expenses designated as assessments by the Board of Directors, under the authority and sanction of the Declaration and Restrictions.
[[Image here]]
Funds for the payment of assessments shall be assessed against and shall be a lien against the Lots in equal proportion or percentage.
Regular assessments shall be paid by the Members on the first of each month.
Special assessments, should they be required by the Board of Directors, shall be levied and paid in the same manner as regular assessments.
When the Board of Directors has determined the amount of any assessment, the Secretary shall transmit a statement of such assessment to each Lot Owner. Assessments are payable at the office of the Corporation.
[[Image here]]
In the event an assessment is not paid when it is due and payable, the Corporation, through the Board of Directors, may proceed to enforce and collect said assessment from the delinquent Owner in any manner provided for by the Declaration, the Articles of Incorporation and these Bylaws. Each Lot Owner shall be individually responsible for the payment of assessments against his Lot and for the payment of reasonable attorneys’ fees and costs incurred by the Corporation in the collection of sums due and the enforcement of any lien held by the *186 Corporation, including attorneys’ fees on appeals, if any.
As previously noted above, Article XII refers to violations, other than nonpayment of an assessment, and based upon Article X, it appears that both regular and special assessments are excluded. Further, even though Article XII refers to the Corporation electing to enforce its lien by foreclosure, it does not say that the lien is for the attorneys’ fees. This is an ambiguity that should be resolved in favor of the homeowner. See Palma v. Townhomes of Oriole Ass’n, 610 So.2d 112, 113 (Fla. 4th DCA 1992).
The Declarations, Article IV, provide that the association is responsible for its share of the common areas, for the roadways, street lighting, etc. The next article, Article V, set forth above, entitled COVENANTS FOR MAINTENANCE ASSESSMENTS, provides in section 1 for the Creation of a Lien and Personal Obligation of Assessments. Reading these articles in conjunction with Article X in the Bylaws on assessments, the only continuing lien provided for is for assessments. Article V also only states that the assessments (annual, special, and excise taxes) plus the costs of collections of assessments including attorneys’ fees is a continuing lien. It does not include attorneys’ fees for enforcement. Article XII of the Bylaws on Violations and Defaults excludes nonpayment of assessments from its purview and does not provide for a lien for violations but allows for the award of attorneys’ fees when bringing an action on a violation. The last two sentences refer to defaults for nonpayment of assessments which are separate.
In any event, we find that the association documents do not provide for a continuing lien that preexisted the homestead exemption for the attorneys’ fees in question here.
The trial court cites Zerquera v. Centennial Homeowners' Ass’n, 752 So.2d 694 (Fla. 3d DCA 2000), in its footnote defining assessment. In Zerquera, the association’s declarations provided that fines against a homeowner were to be treated as assessments and assessments were continuing liens on the property. Therefore, fines were continuing liens and the homestead property could be foreclosed upon under Bessemer. In the instant case, the association documents do not declare attorneys’ fees for enforcement of violations to be assessments. Therefore, there is not a continuing lien which would allow foreclosure upon this homestead property.
Indian Creek is not precluded from seeking other legal measures to collect on its judgment for attorneys’ fees but foreclosure upon the Andreses’ homestead is prohibited. We, therefore, reverse the final judgment of foreclosure.
REVERSED.
WARNER and POLEN, JJ., concur.

. The Andreses actually bought the property in 1998 but whether it was a typographical error or the trial court erroneously thought 1988 was correct, is not germane to our decision.