DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**LILIA BELKOVA,** individually and as successor trustee of the
**LAND TRUST AGREEMENT, NO:072003 DATED 2/9/04,**
Appellant,

v.

**DEER RUN PROPERTY OWNERS' ASSOCIATION, INC.,** et al.,
Appellees.

No. 4D21-2924

[August 23, 2023]

Appeal from the County Court for the Fifteenth Judicial Circuit, Palm Beach County; Sarah L. Shullman, Judge; L.T. Case No. 502017CC001472XXXXMB.

Thomas L. Hunker and Sarah Hafeez of Hunker Appeals, Fort Lauderdale, for appellant.

Steven R. Braten and Dina L. Rosenbaum of Rosenbaum, PLLC, West Palm Beach, for Appellee Deer Run Property Owners' Association, Inc.

Anthony A. Arsali of Arsali LLC, Delray Beach, for Third Party Purchaser Nicholas Arsali.

GROSS, J.

Lilia Belkova, individually and as successor trustee of a 2004 Land Trust, appeals a final judgment foreclosing a homeowners' association lien and an order awarding attorney's fees and costs.

We affirm all points raised on appeal and write to address several issues.

*Overview*

In February 2017, appellee Deer Run Property Owners' Association (the "Association") filed a foreclosure complaint in county court against appellant, as successor trustee of a 2004 Land Trust, and two unknown tenants. The Association asserted two counts: (1) a count to foreclose a

claim of lien for assessments in accordance with section 720.3085, Florida Statutes (2016); and (2) a count for damages seeking to recover delinquent assessments since November 2013 in the amount of $3,857.07, plus interest, late charges, costs and attorney's fees.

Because this case involves the county court's award of the Association's attorney's fees incurred in appellant's bankruptcy cases, we pause to mention those cases.

From 2013 through the final judgment, appellant filed three bankruptcy petitions, including two during the pendency of the Association's foreclosure action. The bankruptcy court dismissed the two petitions that appellant filed during this case.

The bankruptcy court dismissed appellant's third bankruptcy petition with prejudice, finding that appellant's filing was "part of a scheme to delay hinder or defraud secured creditor Deer Run Association." The bankruptcy court also granted the Association *prospective* stay relief relative to the property subject to the Association's county court foreclosure action.

Meanwhile, in the Association's county court foreclosure action, after appellant had evaded the Association's attempted service for two years, and after the Association had moved for a default against appellant, appellant filed a pro se answer and affirmative defenses in May 2019.

The county court denied the Association's motion for default and allowed appellant's filing to stand. The county court also granted the Association's motion to strike eight of appellant's affirmative defenses, with leave to amend. Appellant filed no amendment.

In March 2021, the Association filed a motion for summary judgment, setting the motion for a hearing on April 23, 2021. Appellant sought to continue the hearing until June 2021, citing a horseback riding injury. The county court granted a six-day continuance until April 29, 2021.

On April 29, 2021, appellant's counsel filed an answer and affirmative defenses, without leave of court. The county court denied appellant's second motion for continuance of the summary judgment hearing, determined that the attorney's last-minute filing was untimely, and granted summary judgment for the Association.

In September 2021, the county court entered a final judgment of foreclosure which directed the clerk of court to sell the property on October 13, 2021.

One day before the foreclosure sale, appellant appealed from the final judgment of foreclosure and the order awarding fees and costs. The following day, on October 13, 2021, the clerk of court sold the foreclosed property to a third party purchaser for $180,100.

*The County Court had Jurisdiction to*
*Foreclose the Lien on the Property*

As an initial matter, appellant argues that the county court lacked subject matter jurisdiction to foreclose the Association's lien.

"Judges of county courts may hear all matters in equity involved in any case within the jurisdictional amount of the county court, ***except as otherwise restricted by the State Constitution or the laws of Florida***." § 34.01(4), Fla. Stat. (2016). Lien foreclosure actions "that fall within the county court's statutorily set limit may be filed in either county or circuit court." *Alexdex Corp. v. Nachon Enters., Inc.*, 641 So. 2d 858, 862 (Fla. 1994). "To accept the proposition that the exclusive jurisdiction given to circuit courts in section 26.012 constitutes the 'otherwise restricted by the laws of Florida' contained in section 34.01(4) would render the latter section totally meaningless." *Id.* at 861. Thus, giving each statute its full effect, the Florida Supreme Court concluded that "the legislature intended to provide concurrent equity jurisdiction in circuit and county courts, except that equity cases filed in county courts must fall within the county court's monetary jurisdiction, as set by statute." *Id.* at 862.

Appellant further contends that the county court lacked jurisdiction to foreclose the Association's lien because the property subject to the lien was her homestead. But under Article X, section 4 of the Florida Constitution, one of the exceptions to the exemption from the forced sale of a homestead is "for the payment of taxes and assessments thereon[.]" Indeed, section 222.01, Florida Statutes (2016), which allows an owner to make a designation of homestead before levy, does not apply to "[l]iens and judgments for the payment of taxes and assessments on real property." § 222.01(5)(a), Fla. Stat. (2016).

Further, the creation of a lien "by acceptance of the deed relates back to the time of the filing of the declaration of restrictions." *Bessemer v. Gersten*, 381 So. 2d 1344, 1348 (Fla. 1980). Thus, "[s]ince the acquisition

3

of homestead status does not defeat prior liens, the lienor's right prevails over the respondents' homestead right." *Id.* (citations omitted).

We distinguish *Sepulveda v. Westport Recovery Corp.*, 145 So. 3d 162 (Fla. 3d DCA 2014), which held that section 222.10, Florida Statutes, grants circuit courts exclusive jurisdiction to determine a claimed homestead exemption. However, *Sepulveda* did not involve an action to foreclose a lien for assessments. *Sepulveda* concerned an attempt to levy on claimed homestead property to enforce an unsatisfied judgment. *Id.* at 164. The trial court there was required to determine the validity of the debtor's homestead claim under section 222.10, Florida Statutes. *Id.* at 165–66. "Accordingly, the county court exceeded its subject matter jurisdiction by determining that Sepulveda's Claim of Homestead did not exempt the property from levy." *Id.* at 169.

By contrast, the Association's lien foreclosure action here did not involve a determination of homestead exemption under section 222.10. That is because the Association's action to foreclose its assessment lien was not a "bill filed by a creditor or other person interested in enforcing any unsatisfied judgment or decree." § 222.10, Fla. Stat. (2016).

Under *Alexdex*, the Association's lien foreclosure action here was within the county court's concurrent equity jurisdiction. Circuit and county courts have concurrent equity jurisdiction, except that equity cases filed in county courts must fall within the county court's monetary jurisdiction. The property's alleged homestead status, which appellant did not argue below, did not preclude the county court from entering a judgment foreclosing the Association's lien for assessments.[1]

In the end, appellant has cited no statute that would have barred the county court from exercising subject matter jurisdiction over the Association's lien foreclosure action. The validity of any homestead claim was immaterial. Homestead or not, the Association was entitled to foreclose on its assessment lien.

*The County Court's Monetary Judgment Did Not*
*Exceed its Jurisdictional Limits*

Appellant contends that the county court lacked jurisdiction over the lien foreclosure action because "the total final lien foreclosure judgment

_____

[1] Instead, the reference to the property's alleged homestead status was contained in judicially noticed documents from one of appellant's bankruptcy cases.

4

awarded $87,922.55, far exceeding the county court's $15,000 jurisdictional limit." This argument is without merit.

For actions filed on or before December 31, 2019, county courts have original jurisdiction over "all actions at law in which the matter in controversy does not exceed the sum of $15,000, *exclusive of interest, costs, and attorney's fees*, except those within the exclusive jurisdiction of the circuit courts." § 34.01(1)(c), Fla. Stat. (2016) (emphasis added); Ch. 2019-58, § 9, Laws of Fla. (increasing monetary jurisdiction of county courts for actions filed on or after January 1, 2020).

"[T]he monetary restrictions in section 34.01(1)(c) 1.–4. shall apply to the amount of the lien without consideration to the value of the securing property." *Alexdex*, 641 So. 2d at 862. Because interest, costs, and attorney's fees are excluded from the amount in controversy, *see* § 34.01(1)(c), Fla. Stat. (2016), the *Alexdex* court's reference to the "amount of the lien" necessarily refers to the amount of the lien exclusive of interest, costs, and attorney's fees. Although a claim of lien for assessments may include reasonable attorney's fees as part of the lien, the claim for attorney's fees is not a part of "the matter in controversy" under section 34.01(1)(c). For the purpose of determining the county court's jurisdiction, attorney's fees are ancillary to the damages sought in the underlying causes of action.

Here, the outstanding amount of assessments and late charges—exclusive of interest, costs, and attorney's fees—was under $15,000 throughout the entire foreclosure action. Because the amount in controversy within the meaning of section 34.01(1)(c) was always under $15,000, exclusive of interest, costs, and attorney's fees, the county court had subject matter jurisdiction over the lien foreclosure action.

*The County Court was Permitted to Award the Association's Attorney's Fees for Work Performed in the Bankruptcy Court to Return the Association's Foreclosure Action to the County Court*

Appellant contends that the county court lacked jurisdiction to award the Association's attorney's fees for work performed in bankruptcy court. We reject that contention, because after the bankruptcy stay was lifted, the property subject to the lien remained the appellant's property and returned to the county court's jurisdiction. No disposition of the property subject to the Association's lien was made under the bankruptcy court's supervision.

In a case involving foreclosure on corporate stock securing a loan, we approved a circuit court's award of fees incurred in bankruptcy court relating to the state court claim. *Webber v. D'Agostino*, 251 So. 3d 188, 192 (Fla. 4th DCA 2018). That case, however, did not address the argument presented here.

More instructive is *Dvorak v. First Family Bank*, 639 So. 2d 1076 (Fla. 5th DCA 1994), which drew a distinction between the situation where federal law preempts state law on the award of attorney's fees, and the circumstance here where no preemption exists. *Dvorak* involved a state foreclosure action on real property which was stayed by the filing of a Chapter 11 bankruptcy petition. *Id.* at 1077. "Almost two years later, the bankruptcy trustee conveyed the mortgaged property to the Bank for $6,000, the amount of equity [the borrowers] had in the property." *Id.*

Back in state court, the trial judge awarded the bank its attorney's fees, including fees for work performed in the bankruptcy court. *Id.* The Fifth District reversed that ruling, holding that federal law preempted state law in determining the reasonableness of such fees. *Id.* at 1078–79. The court pointed to 11 U.S.C. § 506(b) as giving the bankruptcy court exclusive jurisdiction. *Id.* That statute provides "a vehicle for bankruptcy courts to award postpetition attorney's fees and costs to *oversecured* creditors if the security agreement so provides." *Id.* at 1078 (italics in original).

The Fifth District was careful to distinguish the situation before it from situations like this case, where:

> the bankruptcy stay had been lifted and the property (which remained the property of the debtor in bankruptcy and the mortgagor in the foreclosure action) was returned to the jurisdiction of the state foreclosure court.

*Id.* at 1077. In this scenario, without any disposition of property in the bankruptcy court, no "recovery" has occurred within the meaning of section 506(b) which would trigger section 506(b)'s operation.[2]

---

[2] 11 U.S.C. § 506(b) provides: "To the extent that an allowed secured claim is secured by property the value of which, after any *recovery* under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." (Emphasis added).

In this case, the bankruptcy court supervised no disposition of the property. The bankruptcy court never determined that the Association was an oversecured creditor, i.e., that the Association's "allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim." Rather, the bankruptcy court dismissed appellant's petition with prejudice and sent the Association's foreclosure case back to state court for further proceedings, even providing prospective stay relief in the event appellant filed yet another bankruptcy petition to "delay, hinder, or defraud" the Association. We therefore affirm the county court's award of the Association's attorney's fees incurred in the federal forum to return the case to a Florida court for resolution.

The Third District has taken a different view of this issue. In *Florida Federal Savings & Loan Ass'n v. Sanchez*, 553 So. 2d 1254, 1255 (Fla. 3d DCA 1989), a case factually similar to this one, the Third District held that a creditor must seek its attorney's fees from the bankruptcy court, not the state court which entered final judgment in a foreclosure action after dismissal of the bankruptcy petition. As authority, *Sanchez* relied upon *In re Boffey*, 14 B.R. 2, 3 (S.D. Fla. 1981), a bankruptcy court decision where the mortgaged property was "liquidated by the [bankruptcy] trustee," not sold in a state foreclosure sale. Thus, *Boffey*'s precise holding does not stretch as far as the Third District extended it.[3]

We certify conflict with *Sanchez*, *Martinez*, and *Pastore-Borroto Development*.

*The County Court Did Not Abuse its Discretion in Refusing to Continue the Summary Judgment Hearing*

Appellant asserts that the county court abused its discretion in refusing to continue the summary judgment hearing due to appellant suffering injuries in a horseback riding accident.

An appellate court reviews a trial court's ruling on a request for continuance for an abuse of discretion. *Taylor v. Inst. for Med. Weight Loss*, 863 So. 2d 398, 400 (Fla. 4th DCA 2003).

To determine if the denial of a continuance amounts to an abuse of discretion, an appellate court focuses on three factors: (1) whether the

---

[3] Without much discussion, the Third District applied *Sanchez* in *Pastore-Borroto Development, Inc. v. Marevista Apartments, M.B., Inc.*, 596 So. 2d 526 (Fla. 3d DCA 1992), *Martinez v. Giacobbe*, 951 So. 2d 902 (Fla. 3d DCA 2007), and *Makarewicz v. Jacoby*, 663 So. 2d 6 (Fla. 3d DCA 1995).

denial of the continuance created an injustice for the movant; (2) whether the cause of the request for continuance was unforeseeable by the movant and not the result of dilatory practices; and (3) whether the opposing party would suffer any prejudice or inconvenience as a result of a continuance. *Fleming v. Fleming*, 710 So. 2d 601, 603 (Fla. 4th DCA 1998).

"[W]hen undisputed facts reveal that the physical condition of either counsel or client prevents fair and adequate presentation of a case, failure to grant a continuance is reversible error." *Ziegler v. Klein*, 590 So. 2d 1066, 1067 (Fla. 4th DCA 1991). However, "cases involving illness of counsel or a party do not mandate reversal in all circumstances." *Krock v. Rozinsky*, 78 So. 3d 38, 41 (Fla. 4th DCA 2012). Instead, additional specific factors should be considered, including: "(1) the length of the requested continuance; (2) whether the counsel who becomes unavailable for trial has associates adequately prepared to try the case; (3) whether other continuances have been requested and granted; (4) the inconvenience to all involved in the trial; and (5) any other unique circumstances." *Myers v. Siegel*, 920 So. 2d 1241, 1243 (Fla. 5th DCA 2006).

Here, the county court did not abuse its discretion in denying appellant a *second* continuance of the summary judgment hearing where the court determined that her request was made for dilatory purposes.

The county court detailed the various, numerous physical problems which appellant had claimed during the course of litigation to delay the proceedings, including exhaustion caused by exposure to "microwave radiation from Internet routers and cell phones," two separate automobile accidents causing a herniated disc and "significant neck injuries" respectively, muscle cramps from hunching over a desk in front of a computer, unspecified "serious illnesses," an unspecified "catastrophic injury," and "chronic mercury and lead poisoning."

The county court also performed a thorough review of the record and made specific findings that appellant's request for continuance was part of a deliberate pattern of "dilatory practices and an intent to delay the proceedings":

> Based on the foregoing findings, a thorough review of this Court's docket and the bankruptcy proceedings, the multiple notices of unavailability spanning 1-2 months each, prior claims of injury and medical incapacity, and [appellant's] bankruptcy filings on the eve of hearings, the Court finds there has been a deliberate pattern by [appellant] to delay [the

8

Association's] efforts to have its motion for summary judgment heard by the Court. [Appellant] has had over a year to oppose [the Association's] motion for summary judgment, file an affidavit in opposition, and obtain an attorney to represent her in these proceedings, but she did not do so.

* * *

In the case at bar, the Court, after weighing the factors enumerated in *Krock,* finds there have been multiple delays by [appellant] and continuances of the hearing on [the Association's] summary judgment motion. These delays were due to [appellant's] lengthy notices of unavailability and serial bankruptcy filings, which the bankruptcy court found was part of a scheme to delay this particular proceeding that has been pending since 2017.

The Court finds that the denial of the motion to continue would not create an injustice for [appellant], who has been on notice of [the Association's] summary judgment motions for a year, and was granted even more time to respond but did not. The Court finds that the request for continuance, even if the allegation of recent medical injuries [is] truthful, is the result of dilatory practices and an intent to delay the proceedings and a ruling on [the Association's] motion. Finally, the Court finds that not only would [the Association] suffer prejudice as a result of another continuance, but that [the Association] already has.

Given these findings, which find support in record, the county court did not abuse its discretion in denying the continuance.

### Conclusion

Without further discussion, we conclude that appellant's remaining arguments and appeals of other orders are either unpreserved or otherwise without merit. Therefore, we affirm the final judgment of foreclosure.

*Affirmed.*

DAMOORGIAN and GERBER, JJ., concur.

* * *

9

*Not final until disposition of timely filed motion for rehearing.*