LILES, Chief Judge.
This is an appeal from a final judgment entered in favor of appellees in the trial court growing out of an interpretation of provisions contained in deeds to the property which is the subject of this cause of action.
The able trial judge heard the testimony and viewed the property; and in reviewing this cause, we have adopted his final judgment as the opinion of this court:
“Prior to June, 1954, one Earl S. Royer and his wife were the record owners of all fractional Section 36 in Township 43 South, Range 21 East. By warranty deed dated June 14, 1954, Royer and his wife *756 conveyed to Howard Inches, Defendants’ predecessor in title, all of fractional Section 36 ‘on the mainland of Pine Island.’
Thereafter, by quit-claim deed dated May 15, 1956, the Royers conveyed to Plaintiff JACKSON BURGESS all of fractional Section 36 ‘other than that portion of said fractional Section 36 which is located on the mainland of Pine Island’.
The sequence of these conveyances created the issue litigation in this cause: Whether the land in controversy could have been described as a part of the ‘mainland’ at the time Royer conveyed to Inches. The land in controversy is located at the north end of Pine Island, which is an island bordered almost entirely by mangrove swamps. Referring to the illustrative diagram attached to this Judgment,* the area in dispute is labeled ‘70 acres more or less’. The land to the southeast is owned by the Defendants and the land to the northwest is owned by the Plaintiff.
Plaintiff relies upon the existence of the water passage or water course running generally north and south (marked water course ‘B’ on the attached diagram) through the mangroves as being a sufficient separation to make the land mass extending to the northwest an island instead of a peninsula. Most of the testimony presented by the parties adverted to the nature and characteristics of this water course. The original government survey made by Horatio Jenkins in 1875 does not show this water course, nor is it shown on at least one other exhibit. All the aerial photographs in evidence show a break in the mangroves, and the Court finds that there was prior to 1954 a narrow cut through the mangroves.
The testimony is in sharp conflict as to whether the water course can be navigated by boat, but the conflict can be resolved by the variation in tide levels in the Pine Island area. For example, the witnesses Barnes and Burlingham, both commercial fishermen, testified that they sometimes, when conditions were conducive to navigation, used the water passage as a ‘short cut’ or to avoid weekend boat traffic through Burgess Bay. Both qualified their testimony by stating they could not get into the area on an extreme low tide.
The witness Ben Howard said he didn’t try to go in there on a ‘spring low tide’. The motion picture film viewed by the Court showed an outboard motorboat navigating through the passage on a high tide. Several witnesses commented upon the marked effect wind conditions had on tide levels in the passage. The witness Rasmussen said the passage was only four to five inches deep and could not be navigated by boat on a day he was there when the wind was brisk.
The testimony is clear, and the Court finds, that the water course cannot be used for purposes of navigation at low tide. The Court further finds that the water course does not regularly and consistently have capacity for navigation, the test required in Lopez v. Smith [Fla.App.], 145 So.2d 509.
All of the testimony of lay witnesses as to water depths in the passage at various times and varying tides is subject to error as being imprecise and no more than estimation. The most convincing testimony is the study of elevations by Surveyor Carl Johnson. When the elevations shown in the insert on the Johnson plat are compared with his testimony, it appears that the center of the water passage would be just a few inches deep at mean low tide. Johnson further testified he was ‘reasonably certain’ that the bottom would be exposed in low tides under certain wind conditions.
The south entrance to the water passage is about 10 feet wide from mangrove to mangrove although the edge of the mangrove on one side is not true growth but rather is foliage pushed into the water when a survey crew chopped out part of the growth to clear a survey line.
Plaintiff’s theory appears to be that any sovereign ownership, measured by legal *757 precedents, lying between the two bulks of land (characterized by Plaintiff as the ‘mainland’ and the first ‘island’ west of the water passage) automatically constitutes the land in dispute as islands. This theory is inherent in the answer of Surveyor Johnson to a question quoted as follows from the transcript:
‘ * * * let’s say, there was only an inch or a quarter of an inch of water, that provided there also was that inch or quarter inch of water, in your opinion, that would make a sufficient waterway to divide it off from the mainland?
‘A No, it would be sufficient even if at time of the extreme low tide there wasn’t a quarter of an inch or no water at all in case of an extreme low tide.’
The problem is not that simple. The court’s task is to determine what the parties to the Royer-Inches deed intended by their use of the word ‘mainland’ in their deed description.
The word mainland is clear in meaning but when it is applied to the property in question it is impossible to determine the intents of the parties. The deed from Royer to Inches conveyed all of the land in fractional Section 36 on the mainland of Pine Island. The attached diagram shows that part of Section 36 is on Burgess Island separated from the ‘70 acres more or less’ by a relatively much broader and deeper water course (marked water course ‘A’). Defendants have maintained that water course ‘A’ was the western boundary of the land conveyed by Royer to Inches. The existence of part of a recognized island in Section 36 lends support to their contention. Burgess Island is also known as Little Bocilla Island, but the ‘70 acres more or less’ has never been designated as an island.
A comparison of the two water courses and their relative depth, width and amount of use is a major consideration. See McBride et al. v. Steinveder [Steinweden], et. al. [72 Kan. 508], 83 P. 822 (Kan.1906). Water course ‘A’ is approximately 7 feet deep, 20 yards wide and is used extensively. Water course ‘B’ is relatively much smaller and is used only occasionally when conditions are conducive to navigation. The size of the ‘70 acres more or less’ is pertinent when considering the effect of water course ‘B’ on the issue involved in this case.
The fact that water course ‘B’ is difficult to locate was considered by the court. The function of the court is to ‘follow the intent of the parties and to locate it (the boundary) where they in fact did locate it’. Jenkins v. Sadler et al. [212 Ky. 581], 279 S.W. 982, 983 (Ky.1926). If it is likely that the parties were not aware of water course ‘B’ or they thought its existence was without consequence, then the Court should give weight to these circumstances.
Plaintiff’s witness Johnson testified that tidal water flows over the greater portion of the ‘70 acres more or less’. This factor is at the root of the unique problems created by the coastal mangrove areas of Florida. Many times rules of law developed in another context fall short of justice when applied to these areas. The dictionary definition of island is completely inadequate in such a setting.
All of the findings of fact set forth above and the several factors discussed cause the Court to conclude that the use of the term ‘mainland’ in the conveyance from Royer to Inches introduced an element of ambiguity into the description of the land being conveyed. To help resolve this ambiguity, it is proper to consider the circumstances under which the conveyance was made and the practical construction placed upon it by the parties to the conveyance.
The Court finds that Royer was acting in behalf of Inches when he acquired record title to fractional Section 36 from Lindley and that his subsequent conveyance to Inches was for the purpose of conveying all of fractional Section 36 except any portion that might be a part of Burgess Island, to which Inches made no claim. This appears to have been the construction placed upon the conveyance by the parties to it; in *758 1955, the first year after the conveyance, all of fractional Section 36 was assessed to Inches and none to Royer.
The circumstances surrounding the conveyance from Royer to Inches were such that the Court should heed them by finding the land in dispute to be part of the ‘mainland’ of Pine Island unless to do so would completely distort the accepted meaning of the words ‘mainland’ and ‘island’.
The testimony is uncontradicted that there is a regular deep-water channel lying between Burgess Island and the northwesterly tip of the disputed land, known to some as ‘Burgess Cut’. Inches testified that he had navigated through this regular channel but not through the other water passage. The existence of the two passages, the character of the shore line in that area as mangrove and the number of small water courses or ‘runs’ through the mangrove all combined to make ambiguous the use of the word ‘mainland’. By analogy, see Weninger [Weniger] v. Ripley [134 Or. 265], 293 P. 425, ‘main channel’.
Plaintiff relies heavily upon State v. Barco [150 N.C. 792], 63 S.E. 673, as authority for finding the land in dispute to be an island. The physical characteristics of the water passage involved in that case are not comparable to this case. There witnesses testified that the north end of the water passage was 48 feet wide and the south end 60 to 75 feet in width, that it was two feet deep at the mouth and eight feet deep in places and that the depth at average tide was two feet. The differences in physical characteristics are such that the Barco case is of little use here.
Several courts have defined ‘island’ as being ‘of a permanent character, not merely surrounded by water when the river is high, but permanently surrounded by a channel of the river, and not a sand bar, subject to overflow by the rise of the river and connected with the mainland when the river is low.’ See, for example, Crow v. Johnston [209 Ark. 1053], 194 S.W.2d 193, 197.
Although the Florida courts have never expressly defined ‘island’, the case of Lord v. Curry [71 Fla. 68], 70 [71] So. 21 (1916), does shed some light on the instant problem. In that case the Plaintiff was seeking title to some high land which was connected to his land by a shallow mangrove flat. In answer to the contention that the high land was an island, the court stated at 25-26;
‘Although the waters have encroached on the land during the years which have intervened, it may well be doubted if, strictly speaking, such tract of land constitutes an island now.’
The court went on to note that during a normal high tide the water was estimated to be around one foot deep in the area separating the claimed island from the mainland. It can be gleaned from the opinion that the court felt this was insufficient to cause the body of high land beyond the flat to be an island although the flat was approximately 250 feet wide.
In view of the characteristics of the topography of the area involved in this case, the Court is of the opinion that the construction most consonant with the intention of the parties who used the word ‘mainland’ in their conveyance is that which would include the disputed land as part of the mainland of Pine Island. Accordingly, the Court finds that the land lying between the water course ‘A’ and ‘B’ on the attached diagram is a part of the mainland of Pine Island as that word is used in the deed from Royer to Inches.
In consideration of the foregoing findings, it is
Ordered and adjudged:
1. That the equities are with the Defendants and against the Plaintiff.
2. That the western boundary of the lands conveyed to Howard Inches, Defendants’ predecessor in title, by the Royer deed is as shown by the red line on the diagram attached to this judgment.
3. That Plaintiff’s claim to lands lying eastward of the aforesaid boundary is hereby dismissed.
*759 4. That the title of Defendants to lands within the aforesaid boundary is hereby quieted and confirmed against the claims of Plaintiff.
5. That the title of Plaintiff to that portion of fractional Section 36 located on Burgess Island is hereby quieted and confirmed against any claims of Defendants.
6.That costs shall be taxed in favor of Defendants and against the Plaintiff on motion and notice.”
Affirmed.
HOBSON and MANN, JJ., concur.

 See Appendix.