McNULTY, Judge.
Appellant Japanese Gardens seeks to foreclose a lien for unpaid increased assessments on appellees’ trailer lot in appellant’s mobile home development.
The lien sued upon came about in this way. Japanese Gardens was developing a mobile home park consisting of some 370 lots plus recreational and other facilities. *195 Appellees purchased one of the lots. Under the plan of development, as it was at the time of appellees’ purchase, Japanese Gardens had covenanted to maintain the park and its facilities in consideration of which there were certain deed restrictions recorded. One such restriction related to assessments to.defray costs of maintenance, and this restriction is the basis of the lien herein. It reads as follows:
“ASSESSMENT. The owners or occupants of each lot shall pay to Japanese Garden, at its principal place of business, on the first day of each month, the sum of $8.75 per lot. Such monthly assessment for all lots can be lowered only with the consent of Japanese Garden. Such monthly assessment for all lots can be raised from the then current assessment by a majority vote of the owners of any and all lots in Japanese Garden at a meeting of lot owners, such meeting to be called by Japanese Garden upon and with thirty (30) days prior written notice by registered or certified mail to the last known address of each lot owner. At such meeting, there shall be one vote for each lot owned in the mobile home park. Said assessment for each lot, if unpaid for a period of thirty (30) days, shall accrue interest of six (6) percent per annum and shall, with such interest, be and become a lien upon said lot, collectible and enforceable in the same manner under Florida law as a mortgage lien.” (Emphasis supplied.)
Now sometime after appellees purchased their lot, it appears that Japanese Gardens ran into some unexplained difficulties with the City of Clearwater relating in some way to the manner in which Japanese Gardens was deeding the lots sold. As a consequence, Japanese Gardens abandoned the original plan to sell lots and began leasing lots instead. Up to this time Japanese Gardens had sold only 162 lots, retaining, then, a majority of 208 lots.
Thereafter, a meeting of lot owners was called by Japanese Gardens for the purpose of increasing the assessment provided for in the aforesaid deed restriction and the assessment was then and there raised from the original $8.75 per month to $12.90 per month. Appellees refused to pay the increase but continued paying the original sum, hence this action ensued to foreclose a lien to the extent of the increase. The trial judge denied the lien and held that the increased assessment was invalid. We reverse.
Basically, in reaching his decision the trial judge determined, first, that the term "owners” as used in the above quoted deed restriction was limited to purchasers of lots, to the exclusion of Japanese Gardens; and secondly, that the term “assessment” was intended to mean assessment for basic maintenance and not “a profit or return of capital investment for the developer.” As to the latter point, considering the two points in inverse order, the trial judge apparently felt that an assessment on the lots sold would amount to an additional return to Japanese Gardens on its investment, over and above its original profit on the sale of lots, which additional return Japanese Gardens might increase at whim since it retained ownership of a majority of lots. This, he concluded, would amount to a fraud on purchasers and frustrate the “inducement” they now say was given under the original plan of development, viz., the expectation that ultimately only purchasers would be empowered to control the destiny of assessments.
We can agree with the trial judge that the term “assessment” was obviously intended to relate only to actual, reasonable expenses of maintenance and costs of operating the recreational and community facilities. We further agree that Japanese Gardens, as a majority owner, cannot arbitrarily raise such assessment. However, it cannot be presumed, merely because such assessment was increased by the sole vote of Japanese Gardens as the majority owner, or merely because it has plenary power to so raise it, that such assessment was raised arbitrarily. From the record herein, or from the judgment appealed from, *196 we cannot determine whether the trial judge found in fact that the increased assessment actually included a profit or return of capital, which could be a proper factual determination, or whether he deemed the increase invalid solely because of Japanese Gardens’ plenary power aforesaid, which would, we think, be improper since the increase might well be reasonably necessary and proper for the purpose intended notwithstanding. These issues, therefore, must be resolved herein on remand.
Considering now the meaning of “owner,” appellees seek to defend the trial judge’s holding that it relates only to purchasers, by arguing: (a) that Japanese Gardens deviated from the original plan of development, which contemplated selling lots, thus precluding purchasers from ultimately acquiring a majority vote on the issue of assessments; and (b) that the term “owners” was latently ambiguous, thus rendering it amenable to parol testimony bearing on the parties’ understanding of the phrase “ . . .a majority vote of the owners of any and all lots in Japanese Garden. ...”
As to the first argument, we initially point out that the settled rule of law on the point is that even though a project has a specific plan of development people entering into contracts with the developer cannot demand that he stay with the original plan unless such plan was expressly made a part or condition of the contract.[1] There is nothing in the restrictions involved herein nor in any other agreement between the parties hereto which rendered the original plan of development irrevocable or which made such plan a condition of appellees’ purchase. The unilateral hope, understanding or anticipation on the part of appellees may have operated as a subjective “inducement” to them, but could not bind the developer. The first argument falls.
With regard to the second argument, relating to ambiguity of the term “owner,” we disagree that it is ambiguous. “Owner” is not a term of art in a written real estate transaction; it can mean only one thing unless qualified in the writing itself. Clearly and unequivocally it means what it says, i. e., “owner”; and to admit extrinsic evidence as to some other meaning, or to show by parol that it means one other than the owner of the legal or equitable title to the freehold, would be both to create an ambiguity and to rewrite the contract of the parties. Neither is permissible.
Additionally, and parenthetically, we point out that appellees cannot be heard to say that Japanese Gardens could not be considered an “owner” even under the original plan of development. In addition to the deed restriction quoted above relating to assessments, other deed restrictions in the record reveal that ownership of the lots or any of them may revert to Japanese Gardens notwithstanding a prior sale. These latter restrictions relate to resale of lots and repurchase options reposing in Japanese Gardens either upon default of a purchaser. or upon the latter’s desire to sell out. So even within contemplation of the original plan, Japanese Gardens could still become an “owner” even if all lots had theretofore been sold at least once. Indeed, we wonder whether appellees would deny “ownership” to Japanese Gardens if it owned less than a majority of lots now, and if so, on what theory. In any case, we can find nothing in the record which limits, dilutes or restricts any of the benefits of freehold ownership in the trailer park herein just because such ownership remains initially in or reverts subsequently to the developer, Japanese Gardens; or, for that matter, even if an individual third party were to bona fide purchase a majority of the lots. On what theory could appellees impeach his rights of ownership ?
*197 In view of the foregoing, therefore, the judgment appealed from should be, and it is hereby, reversed; and the cause is remanded for further proceedings not inconsistent herewith.
Reversed.
PIERCE, C. J., and LILES, J., concur.

. See, S. H. Kress Company v. Desser and Garfield, Inc. (Fla.App.1966), 193 So.2d 192.