805 So.2d 22 (2001)
BOARD OF TRUSTEES OF THE INTERNAL IMPROVEMENT TRUST FUND, Appellant,
v.
LOST TREE VILLAGE CORPORATION, Appellee.
No. 4D00-3405.
District Court of Appeal of Florida, Fourth District.
October 10, 2001.
*23 Robert A. Butterworth, Attorney General, and Monica K. Reimer, Assistant Attorney General, Tallahassee, and Andrew J. Baumann, Assistant General Counsel of the Department of Environmental Protection, Tallahassee, for appellant.
Jack J. Aiello and Ernest A. Cox of Gunster, Yoakley & Stewart, P.A., West Palm Beach, and Stephen H. Grimes of Holland & Knight, LLP, Tallahassee, for appellee.

ON MOTION FOR REHEARING
STEVENSON, J.
We grant the appellant's motion for rehearing, withdraw our prior opinion, and substitute the following in its place.
This is an appeal from a final judgment in a quiet title action involving a number of tracts of land in the Indian River. The dispute stems from a 1950 deed and a 1956 supplemental deed issued by the Board of Trustees of the Internal Improvement Trust Fund (the trustees) conveying state-owned lands to Fred Tuerk, Lost Tree's predecessor-in-title. After a non-jury trial, the court ruled in favor of Lost Tree, finding that the 1956 supplemental deed unambiguously conveyed 571.51 acres to Fred Tuerk, including both islands and submerged lands. The trial judge then ruled that Lost Tree's surveyor, David Jones, accurately placed the boundaries of the property on the ground overlapping the main barrier island.[1] We affirm in part and reverse in part.

Factual background
In 1950, Fred Tuerk applied to the trustees to purchase nine tracts of land owned by the state. Along with the purchase application, Tuerk submitted a duplicate of a 1930 map prepared by the R.D. *24 Carter Surveying Firm in Vero Beach, which diagramed the nine tracts in question.[2] As shown on this map, the boundary lines of the tracts included islands and submerged lands, but fell short of the main barrier island and stopped in the Indian River. On September 26, 1950, the trustees conveyed the tracts of land to Tuerk by deed. This 1950 deed gave a brief description of the nine tracts and stated that the conveyance contained "365 acres, more or less." The tracts identified in the 1950 deed did not contain metes and bounds descriptions. At Tuerk's request, the trustees issued a "deed supplement" in 1956 bearing metes and bounds descriptions for each tract. The tracts' descriptions were followed by the statement "containing 571.51 gross acres, more or less, lying and being in Indian River County, Florida, and for payment purposes, a net acreage of 365 acres." The metes and bounds descriptions in the 1956 deed were consistent with those written on the 1930 map.

The acreage
At the conclusion of the final hearing, the trial judge determined that the 1956 deed was unambiguous on its face and conveyed 571.51 acres, including all of the property within the metes and bounds description. The construction of a contract, or other written instrument, is a question of law that is reviewed de novo. See Gilman Yacht Sales, Inc. v. FMB Invs., Inc., 766 So.2d 294, 296 (Fla. 4th DCA 2000); Mariner Cay Prop. Owners Ass'n v. Topside Marina, Inc., 714 So.2d 1130, 1131-32 (Fla. 4th DCA 1998). Our de novo review convinces us that, like the trial judge found, the deed was not ambiguous and conveyed 571.51 acres.
The 1956 deed first lists the tracts of land followed by their metes and bounds descriptions, then states:
Containing 571.51 gross acres, more or less, lying and being in Indian River County, Florida, and for payment purposes, a net acreage of 365 acres.
Appellant argues that since it was not proper for the trustees to make a "gift" of state lands,[3] the phrase"and for payment purposes 365 acres"indicates that the trustees actually intended to convey only 365 acres, not 571.51. Despite this opaque reference to payment, we find that the deed unequivocally conveys 571.51 acres. Any ambiguity created by the statement "and for payment purposes 365 acres," relates only to the method used to calculate payment for the tracts. In regard to setting the price though, the trustees were allowed to sell and convey the islands and submerged lands "upon such prices and terms as they [saw] fit." See § 253.13, Fla. Stat. (1941).
A clear, explicit and certain description of land in a deed will not be varied by a generalized and less definite description. See Black v. Skinner Mfg. Co., 53 Fla. 1090, 43 So. 919, 921 (1907); P'ship Props. Co. v. Sun Oil Co., 552 So.2d 246, 247 (Fla. 1st DCA 1989). The phrase "containing 571.51 acres" is clear, explicit and definitive, and thus, must be preferred in the interpretation of this deed over the words "for payment purposes 365 acres," which are of uncertain import. We also agree with Lost Tree's argument that even if the deed contains an unclear acreage estimate, the boundaries of the property, and the acreage contained therein, must be determined by the superior call to the metes and bounds descriptions:

*25 "Of all the descriptive particulars in a deed, quantity is regarded as the least reliable, and yields to calls for monuments as well as to courses and distances, unless a clear intent to convey a certain quantity is manifested. Where a deed describes the land conveyed by well-defined metes and bounds, and states the number of acres contained therein, the more certain description by boundaries must govern the construction of the call; and both grantor and grantee, in the absence of fraud, take the risk as to the quantity of the land."
Mogee v. Haller, 222 So.2d 468, 469 (Fla. 1st DCA 1969)(quoting 10 FLA. JUR. 151 Deeds § 145; TP; FL_PREVIOUS_EDITION; and citing 23 AM. JUR. 2D 280 Deeds § 240).
Even though the trial judge determined that the deed was unambiguous as to the acreage conveyed, he nevertheless received parol evidence and other documentary evidence. In consideration of this evidence in the alternative, the trial court found that it too showed that 571.51 acres were intended to be conveyed. Because the extrinsic evidence supports the trial judge's findings, we affirm the alternative determination as well. Further, the totality of the extrinsic evidence surrounding the transactions between the parties, including consideration of the 1930 map, the 1950 deed, and the 1956 deed, could support the inference that the initial price established for the property included the gross acreage of 571.51. Therefore, we reject the trustees' argument that the final judgment essentially approves an improper "gift" of 206 acres of state lands.

The location of the property
In addition to claiming that the deeds were ambiguous as to the quantity of property conveyed, the trustees maintained that the deed was also ambiguous as to the property's location. The trustees contend that although the call for tract 25 to commence "at the southwest corner of Section 19" appears clear and unambiguous on its face, it is actually of uncertain meaning. The trustees argue that this call injects a latent ambiguity into the deed because a government monument for this corner was never set, and no reference to "the southwest corner of Section 19" appears in the field notes of the federal surveyor responsible for surveying the section lines in that township. Consequently, the trustees claim that review of the extrinsic evidence will reveal that the description contained calls to a federal public lands survey section corner which did not exist as part of the federal public lands survey.
The trustees contend that examination of the extrinsic evidence surrounding the transaction would show that when the original application to purchase the property was made, Tuerk presented a 1930 map which depicted the tracts as located entirely off-shore. The trustees then reason that the subsequent 1950 and 1956 deeds were both predicated on the parties' belief that the property was located as depicted on the 1930 map. Thus, the trustees argue that the metes and bounds descriptions contained in the deed, with the call for commencement at a non-existent, uncertain federal corner, must be interpreted to reflect the parties' true intentions, that is, that the boundaries not overlap the main barrier island.

Latent ambiguities
A latent ambiguity in a deed description is said to exist when the deed, clear on its face, is shown by some extraneous fact to present an equivocation by being susceptible to two or more possible meanings. See Whitfield v. Webb, 100 Fla. 1619, 131 So. 786, 788 (1931); Burgess v. Pine Island Corp., 215 So.2d 755, 756 (Fla. 2d DCA 1968); see also City of Hollywood v. Zinkil, 283 So.2d 581, 584 (Fla. 4th DCA *26 1973). Where there is a latent ambiguity in a deed or contract, parol and other extrinsic evidence may be introduced to show the true intent of the parties. See id.; Landis v. Mears, 329 So.2d 323 (Fla. 2d DCA 1976); Ace Elec. Supply Co. v. Terra Nova Elec., Inc., 288 So.2d 544 (Fla. 1st DCA 1973); Drake v. City of Fort Lauderdale, 227 So.2d 709 (Fla. 4th DCA 1969).
From our review of the record, it appears that the trial judge never examined the extrinsic evidence with the intention of determining if a latent ambiguity existed. Whenever a party presents an arguable claim that a document contains a latent ambiguity, the court is obliged to consider the extrinsic evidence, at least to the extent necessary to determine whether the claimed latent ambiguity actually exists. This is so because a latent ambiguity is shown where the writing is otherwise clear and unambiguous on its face, but some collateral fact creates a necessity for interpretation. See Ace Elec. Supply Co., 288 So.2d at 547. Although the trial judge accepted Lost Tree's boundary survey as an accurate survey of the descriptions in the deed, the trial judge's alternative ruling found that Lost Tree's survey placed the property in a location different from that intended by the parties. Whether this discrepancy can be redressed as a "latent ambiguity" depends on whether the words used in the deed truly can be susceptible to a variety of meanings within the contemplation of the parties. See RX Solutions, Inc. v. Express Pharmacy Servs., Inc., 746 So.2d 475 (Fla. 2d DCA 1999); Avis Rent A Car Sys., Inc. v. Monroe County, 660 So.2d 413 (Fla. 3d DCA 1995). The trial judge did not resolve these important factual conflicts.
We recognize that generally the existence of an ambiguity in a contract is a question of law. See Centennial Mortgage, Inc. v. SG/SC, Ltd., 772 So.2d 564, 565-66 (Fla. 1st DCA 2000). The instant case presents a scenario requiring the initial resolution of certain factual disputes by the finder of fact before this court can properly make its de novo legal determination. If the trial court finds on remand that a latent ambiguity exists, the trial court must resolve that ambiguity as a question of fact. See Land O'Sun Realty Ltd. v. REWJB Gas Invs., 685 So.2d 870 (Fla. 3d DCA 1996).

Conclusion
Accordingly, the motion for rehearing is granted. We affirm in part, reverse in part, and remand for further proceedings consistent with this decision. On remand, the trial court may, in its discretion, consider additional evidence. We have considered the other issues raised by the trustees in the initial briefing, and the motion for rehearing, but find no reversible error.
FARMER and SHAHOOD, JJ., concur.
NOTES
[1] If the boundary lines of the property reach the shores of the Indian River, Lost Tree will not be required to obtain the trustees' approval to build a bridge connecting the islands to the mainland. Lost Tree intends to develop the property as a premier residential island community.
[2] Throughout this case, the 1930 map is also referred to as a plat and a survey.
[3] The trustees are only authorized to sell state-owned islands and submerged lands. See § 253.13, Fla. Stat. (1941). This statute was referenced in the deed.