PLEUS, ROBERT, J., Jr., Senior Judge,
In this dispute over ownership of submerged lands and riparian rights, Henry and Esther Whetstone appeal from a final summary judgment in favor of the City of St. Augustine. The Whetstones own the Bayfront Inn, a motel located in the historic district of St. Augustine. Their property is bordered to the east by a pdblic street, Avenida Menendez, formerly known as Bay Street. East of the street and sidewalk is a large public seawall. ' East of the seawall is Matanzas Bay, part’ of the Matanzas River, which is'a navigable waterway. In 2011, the Whetstones applied to the City for a permit to build a 270-foot dock and wedding platform on submerged lands in Matanzas Bay, across the street from their motel. ' The City denied the permit because the Whetstones did not own any submerged lands or riparian rights associated with their property. The Whetstones sued the City, seeking a declaration that their property included adjacent portions of Avenida Menendez, the seawall, submerged lands in Matanzas Bay, and riparian rights. The trial court granted summary judgment for the? City, finding that the Whetstones’ property-did not include submerged lands or riparian rights. We affirm.
The Whetstones’ theory that their property includes submerged lands rests upon their contentions that it extended to the low water mark by virtue of Spanish colonial law or descriptions in the chain of title, and that their predecessor in title reserved these submerged lands when he dedicated a portion of the property to construct Bay Street in 1845. We believe the trial court properly rejected those arguments. ■ ;
The court first examined the, deed by which the, Whetstones acquired their property in 1965 and noted that it did.-not reference any submerged lands. Instead, it described their property as being bounded to the “east by Bay Street,” as also *36 reflected in the 1905 official city map. The court also examined the chain of title to the property and properly rejected the Whetstones’ efforts to combine descriptions from adjacent properties to support their theory. In the title history to, the lot in question, the court found no descriptions extending to the low water mark. The court also rejected the Whetstones’ effort, in 2011, to deed submerged lands to themselves. See Apalachicola Land & Dev. Co. v. McRae, 86 Fla. 393, 98 So. 505, 5Í7 (1923) (rejecting later deed purporting to convey submerged lands as mere “legal conclusions” that were ineffective unless earlier Indian-Spanish grant included submerged lands). Private property owners cannot unilaterally grant additional land'to themselves and any deed purporting to do so is a nullity. See Sinatra v. Bussel, 119 So.3d 473, 476 (Fla. 2d DCA 2013), review denied, 134 So.3d 450 (Fla.2014) (holding that deed transferring dock and boat slip, which were limited common elements of condominium, was a nullity because grant- or had no authority to transfer). Thus, none of the conveyances in the chain of title expressly conveyed submerged lands.
The court also correctly rejected the Whetstones’ contention that their property implicitly included submerged lands under Spanish colonial law. Instead, under Spanish colonial law, ownership of land bordering navigable waters extended to the high water mark, not the low water mark, unless submerged lands were expressly granted or authorized by the Spanish Crown. McRae, 98 So. at 517; see also Bd ofTrs. of Internal Imp. Trust Fund v. Webb, 618 So.2d 1381, 1382-83 (Fla. 1st DCA 1993). The conveyance from Spain in this case contained no such grant of submerged lands. Because the Whetstones’ property never included submerged lands, their predecessor in title could not have reserved submerged lands he did not have in a common law dedication.
The trial court also properly rejected the Whetstones! alternative claim of riparian rights as a basis for applying for the dock permit. “Riparian rights are those incident to land bordering upon navigable waters.” § 253.141(1), Fla. Stat. (2012). The court observed that the Whetstones’ 1965 deed did not extend to Matan-zas Bay and therefore precluded their assertion of riparian rights. Even if their property included riparian lights in the past, such rights were not expressly reserved in any dedication, and 'thus would have been “impliedly dedicated as an incident to the easement.” City of Daytona Beach v. Tuttle, 630 So.2d 586, 588 (Fla. 5th DCA 1993) (citing City of Tarpon Springs v. Smith, 81 Fla. 479, 88 So. 613 (1921); Brickell v. Town of Ft. Lauderdale, 75 Fla. 622, 78 So. 681 (1918)).
Finally, we reject the Whetstones’ contention that the City has treated them unfairly in comparison to other properties granted dock permits based on riparian rights. The only example they discuss in any detail is the Santa .Maria Restaurant, which is located near their property. Despite their proximity, however, the two properties are not similarly situated because the restaurant was built upon submerged lands expressly granted from the Spanish Crown and later severed from the adjacent upland property.
Because the Whetstones had no riparian rights or ownership of submerged lands associated with their property, the City correctly refused to consider their dock application. Accordingly, we affirm.
AFFIRMED.
EVANDER and EDWARDS, JJ., concur.