NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

CITY OF CLEARWATER,                     )
                                        )
            Appellant,                  )
                                        )
v.                                      )     Case No. 2D17-2006
                                        )
BAYESPLANADE.COM, LLC, a Florida        )
Limited Liability Company,              )
                                        )
            Appellee.                   )
_____    )

Opinion filed June 22, 2018.

Appeal from the Circuit Court for Pinellas
County; Jack R. St. Arnold, Judge.

Paul Richard Hull, Assistant City Attorney,
Clearwater, for Appellant.

Robert V. Potter and Sharon E. Krick of
Johnson, Pope, Bokor, Ruppel & Burns,
LLP, Clearwater, for Appellee.


BLACK, Judge.

        BayEsplanade.com, LLC, filed a complaint against the City of Clearwater

to quiet title to 5.88 acres of submerged land below what is now known as Mandalay

Channel, between Clearwater Beach and the islands that comprise Island Estates.

BayEsplanade claimed title through a 1957 quitclaim deed.  The City of Clearwater filed

a counterclaim to quiet title, claiming title through a 1934 quitclaim deed. Following cross motions for summary judgment, final summary judgment quieting title was entered in favor of BayEsplanade. We reverse the judgment in favor of BayEsplanade and remand with instructions that judgment be entered quieting title in favor of the City of Clearwater. The language of the 1934 deed to the City of Clearwater is unambiguous, and the trial court erred in admitting extrinsic evidence to construe it.

The issue presented in the motions for summary judgment concerns whether the 1934 quitclaim deed from the Clearwater Island Bridge Company (the Bridge Company) to the City of Clearwater unambiguously conveyed all lands— including submerged land—within the boundaries described in the deed. A brief deraignment of title to the submerged land in dispute is necessary.

Prior to 1926, title to the submerged land was held by the Trustees of the Internal Improvement Fund of the State of Florida. In 1926, the Trustees conveyed approximately thirty-five acres of submerged land to the Bridge Company, which included the submerged land at issue in this case (the TIIF deed). The TIIF deed described the eastern boundary of the conveyed submerged land as "the West side of [the] channel between Sand Key and Ragged Key."

In 1934, the Bridge Company executed a quitclaim deed and release to the City of Clearwater, conveying the lands described as follows:

> [1] Beginning on the shore of the Gulf of Mexico at a point where the North line of the tract of land designated as "Clearwater City Park" on a plat of Clearwater Beach as the same is recorded in Plat Book 5, Page 2 of the Public Records of Pinellas County, Florida, if prolonged West would intersect said Gulf shore, thence run Southerly along said shore line Four Hundred (400) feet; thence East parallel to the North line of said "Clearwater City Park" to the waters of Clearwater Bay as of the 17th day of May, 1917; thence

Northeasterly along Clearwater Bay to a point where said line would intersect the North line of said "Clearwater City Park" if prolonged East; thence West to the point of beginning; [2] together with all lands lying between the North and South lines of said tract extended Eastwardly to the Channel of Clearwater Harbor; [3] together with all riparian rights.

The 1934 deed clearly conveys three interests: (1) the upland parcel described as beginning on the shore of the Gulf of Mexico and extending to the waters of Clearwater Bay (Parcel 1); *together with* (2) the parcel described as "all lands lying between the North and South lines of [Parcel 1] extended Eastwardly to the Channel of Clearwater Harbor"; *together with* (3) all associated riparian rights. See, e.g., Thrasher v. Arida, 858 So. 2d 1173, 1174 (Fla. 2d DCA 2003) (describing a deed as conveying two parcels where the deed conveyed one described area *together with* a second area). There are no reservations or exceptions in the deed.

The Bridge Company had previously conveyed Parcel 1 and the appurtenant riparian rights to the City of Clearwater in a May 17, 1917, deed. At the time of the 1917 deed, a bridge spanned the Channel of Clearwater Harbor,[1] connecting Clearwater Beach to the mainland. The description of Parcel 1 in the 1917 deed referenced the bridge:

Beginning on the shore of the Gulf of Mexico at a point where the North line of the tract of land designated as "Clearwater City Park" on a plat of Clearwater Beach as the same is recorded in the Land Records of Pinellas County Florida, if prolonged West would intersect said Gulf shore; thence run southerly along said shore line Four Hundred (400) feet; thence East parallel to the North line of said

---

[1]The parties agree that the channel between Sand Key and Ragged Key is now known as Mandalay Channel and has previously been known as the Channel of Clearwater Harbor.

- 3 -

"Clearwater City Park" to the waters of Clearwater Bay;
thence Northeasterly along Clearwater Bay to a point
Twenty five (25) feet distant measured at right angle from
the center of a bridge now located and constructed by the
Clearwater Island Bridge Company; thence northwesterly
along a curved line Twenty five (25) feet from the center of
said bridge to a point on the North line of said "Clearwater
City Park" extended eastwardly; thence West to the point of
beginning.  Together with all riparian rights.

The 1917 deed also contained restrictions on the use of Parcel 1, which were released in the 1934 deed.  The bridge connecting Clearwater Beach to the mainland was destroyed in 1921 by a hurricane.  Thus, the bridge is not referenced in the 1934 deed. Importantly, the 1917 deed does not convey any property east of the bridge and to the Channel of Clearwater Harbor.

In 1957, the Bridge Company conveyed by quitclaim deed to BayEsplanade's predecessor in interest, North Bay Company, a parcel bounded on the east by the "West side of [the] channel between Sand Key and Ragged Key" and on the west by the "average high water line on Sand Key," containing approximately thirty-five acres.  North Bay Company quitclaimed the parcel to BayEsplanade in 2005.

In its motion for summary judgment, BayEsplanade sought a determination of whether the words used in the 1934 deed to the City of Clearwater "describe the Submerged Lands in Controversy or whether they describe other lands." BayEsplanade contended that the language of the deed conveying "all lands lying between the North and South lines of [Parcel 1] extended Eastwardly to the Channel of Clearwater Harbor" did not convey title to the submerged land lying within the described boundary.  In its motion, BayEsplanade did not suggest what "other lands" the 1934 deed could be describing.

The City of Clearwater also filed a motion for summary judgment. The City contended that the 1934 deed was not ambiguous and not subject to attack by extrinsic or parol evidence. It argued that the deed conveyed all lands—whatever they might be—within the boundaries identified in the deed. The City further argued that its title was first in time and superior to any claim of title BayEsplanade may have.

In its order granting summary judgment and quieting title in favor of BayEsplanade, the trial court found that the language "together with all lands lying between the North and South lines of said tract extended Eastwardly to the Channel of Clearwater Harbor; together with all riparian rights" was either patently or latently ambiguous, such that consideration and examination of extrinsic evidence was warranted.[2] Upon its consideration of the extrinsic evidence, the court determined that submerged land was not conveyed to the City of Clearwater in the 1934 deed. Rather, the court found that the Bridge Company retained ownership of the submerged land until it was conveyed to BayEsplanade's predecessor in title in 1957. The court determined that all lands except submerged lands were conveyed in the 1934 deed.

---

[2]Although the trial court stated that the language in the deed was either patently or latently ambiguous, given that the court admitted parol evidence to construe the deed's language, the court could not have found the language patently ambiguous. See Mendelson v. Great W. Bank, F.S.B., 712 So. 2d 1194, 1196 (Fla. 2d DCA 1998) ("[I]f the instrument's description of the property is patently ambiguous, and the instrument furnishes no other information from which the parties' intention can be gleaned, the attempted conveyance is void, and parol evidence may not be employed to cure the deficiency."). We also note that nothing about the clause "together with all riparian rights" is ambiguous. Because it is a separate clause granting rights in addition to those conveyed in the first and second clauses of the deed, it is not, as the trial court found, "inconsistent" with the conveyance of submerged land. Even if the deed had not expressly conveyed riparian rights, they are appurtenant to the uplands conveyed in the deed. See, e.g., Haynes v. Carbonell, 532 So. 2d 746, 748 (Fla. 3d DCA 1988).

Our review of an order granting final summary judgment is de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000). In a quiet title action, "the complainant must show with clearness, accuracy, and certainty the validity of [its] own title"; it "must rest upon the strength of [its] own title, and not upon the lack of right in the opposing party." Brickell v. Trammell, 82 So. 221, 229 (Fla. 1919) (citing cases). As such, we review de novo whether a deed is ambiguous or unambiguous. Hastie v. Ekholm, 199 So. 3d 461, 464 (Fla. 4th DCA 2016) (citing Am. Quick Sign, Inc. v. Reinhardt, 899 So. 2d 461, 467 (Fla. 5th DCA 2005)).

In our review of the language conveying "all lands" in the 1934 deed, we must "consider the language of the entire instrument in order to determine the intent of the grantor, both as to the character of estate and the property conveyed and to so construe the instrument as if legally possible to effectuate such intent." Thrasher, 858 So. 2d at 1175 (quoting Reid v. Barry, 112 So. 846, 851 (Fla. 1927)). "If there is no ambiguity in the language employed [in a deed] then the intention of the grantor must be ascertained from that language." Saltzman v. Ahern, 306 So. 2d 537, 539 (Fla. 1st DCA 1975). That is, "[w]hen the language of a deed is clear and certain in meaning and the grantor's intention is reflected by the language employed, there is no room for judicial construction of the language nor interpretation of the words used." Rogers v. United States, 184 So. 3d 1087, 1095 (Fla. 2015) (quoting Saltzman, 306 So. 2d at 539).

The 1934 deed conveyed three interests: Parcel 1; "all lands lying between the North and South lines of [Parcel 1] extended Eastwardly to the Channel"; and all associated riparian rights. Parcel 1 and the associated riparian rights are not at issue. Nor is there a dispute as to the boundaries described in the deed, including the

boundaries of the conveyance of "all lands"; the east boundary of the conveyed "all lands" is clearly the Channel of Clearwater Harbor. See Bd. of Trs. of the Internal Improvement Tr. Fund v. Walker Ranch Gen P'ship, 496 So. 2d 153, 156 (Fla. 5th DCA 1986) ("A deed conveys all within the boundaries, but does not convey the boundary itself. . . . Bounded by the navigable water, the lake, or the stream, the law extends the boundary to the edge of the channel." (quoting Axline v. Shaw, 17 So. 411, 413 (Fla. 1895))); cf. Bd. of Trs. of the Internal Improvement Tr. Fund v. Lost Tree Vill. Corp., 805 So. 2d 22, 25 (Fla. 4th DCA 2001) (discussing claim that deed was ambiguous as to the location of property). Rather, the dispute here is over the breadth or scope of "all lands."

"[A] riparian owner may separate his uplands from his submerged lands," conveying each to different grantees or selling one while withholding the other. Caples v. Taliaferro, 197 So. 861, 862 (Fla. 1940). At the time the 1934 deed was executed, the Bridge Company held title to the submerged land at issue through the TIIF deed. "All lands" as used in the 1934 deed to describe the property conveyed eastward to the Channel of Clearwater Harbor "has a clear, unequivocal common meaning"; there is no uncertainty as to what lands are conveyed. See Dade City v. Simpson, 290 So. 2d 530, 531 (Fla. 2d DCA 1974); cf. Syverson v. Jones, 10 So. 3d 1123, 1125 (Fla. 1st DCA 2009) (concluding no latent ambiguity existed in prenuptial agreement based on the omission of a qualifier on the term "marriage"). The phrase "all lands" is not ambiguous, and when read with the remainder of the deed, there is no indication that all lands is lesser in scope than "all" or that lands means anything other than lands. Further, there is no argument presented that "all lands" is a term of art, and we have found no basis to conclude that it is. See Dade City, 290 So. 2d at 531; Japanese Gardens Mobile

- 7 -

Estates, Inc. v. Hunt, 261 So. 2d 193, 196 (Fla. 2d DCA 1972) (" 'Owner' is not a term of art in a written real estate transaction; it can mean only one thing unless qualified in the writing itself. Clearly and unequivocally it means what it says, i.e., 'owner'; and to admit [e]xtrinsic evidence as to some other meaning . . . would be both to [c]reate an ambiguity and to rewrite the contract of the parties. Neither is permissible."). There is no reservation or exception in the 1934 deed; the conveyance is not subject to any prior deed, easement, reservation, exception, or right. Cf. Rogers, 184 So. 3d at 1100 ("The time for appellants to have declined voluntary relinquishment of subsurface mineral rights was when the fee simple sale was bargained and consummated . . . ." (quoting Holland v. State, 388 So. 2d 1080, 1082 (Fla. 1st DCA 1980))).

"When a deed is unambiguous and sufficient on its face to show the grantor's intent as to the property described and the estate conveyed, extrinsic evidence is not admissible to vary the terms." Rogers, 184 So. 3d at 1100. Nonetheless, and notwithstanding our conclusion that the language of the deed is unambiguous, "[w]henever a party presents an arguable claim that a document contains a latent ambiguity, the court is obliged to consider the extrinsic evidence, at least to the extent necessary to determine whether the claimed latent ambiguity exists." Thrasher, 858 So. 2d at 1175 (quoting Lost Tree Vill. Corp., 805 So. 2d at 26). "This is so because a latent ambiguity is shown where the writing is otherwise clear and unambiguous on its face, but some collateral fact creates a necessity for interpretation." Lost Tree Vill. Corp., 805 So. 2d at 26. However, in order for the trial court to have properly admitted parol evidence to construe the language of the 1934 deed, a latent ambiguity must first exist.[3]

---

[3]We note that "[w]hen an agreement contains a latent ambiguity[,] . . . the issue of the correct interpretation of the agreement is an issue of fact which precludes

- 8 -

"A latent ambiguity in a deed description is said to exist when the deed, clear on its face, is shown by some extraneous fact to present an equivocation by being susceptible to two or more possible meanings." Lost Tree Vill. Corp., 805 So. 2d at 25; accord Thrasher, 858 So. 2d at 1175. A latent ambiguity arises when the words of a conveyance "apply to and fit without ambiguity" to more than one subject. Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So. 2d 1135, 1139 (Fla. 1998) (quoting Perkins v. O'Donald, 82 So. 401, 404 (Fla. 1919)). "In such cases [parol] evidence will be received to prove *which* of the subjects" was intended to be conveyed. Id. (emphasis added) (quoting Perkins, 82 So. at 404).

Although BayEsplanade contends that "all lands" is a phrase "normally used to convey 'all uplands,' " it provided no extrinsic evidence supporting that assertion.[4] There is no ambiguity as to the quality of title conveyed. Cf. Thrasher, 858 So. 2d at 1176 (discussing ambiguity as to legal description "with language limiting the quality of title or use of the property"). A subsequent conveyance of the identical property to BayEsplanade's predecessor in title is insufficient to establish a latent ambiguity. See Saltzman, 306 So. 2d at 538. And BayEsplanade presented no evidence of "alternative factual scenarios" to which "all lands" could apply. See Deni

_____

summary judgment." Barrington v. Gryphon Invs., Inc., 32 So. 3d 668, 671 (Fla. 2d DCA 2010) (alterations in original) (quoting Mac-Gray Servs., Inc. v. Savannah Assocs. of Sarasota, LLC, 915 So. 2d 657, 659-60 (Fla. 2d DCA 2005)). However, in this case, the parties agreed that no material facts beyond those presented at the summary judgment hearing existed, given that the conveyance at issue occurred in 1934.

[4]The validity of the TIIF deed conveying submerged land to the Bridge Company is not in question. Cf. Whetstone v. City of St. Augustine, 186 So. 3d 34, 36 (Fla. 5th DCA 2016) ("Because the Whetstones' property never included submerged lands, their predecessor in title could not have reserved submerged lands he did not have . . . .").

- 9 -

Assocs., 711 So. 2d at 1139 (quoting Perkins, 82 So. at 404); cf. Ware Constr. Co. v. Thomas, 357 So. 2d 452, 454 (Fla. 2d DCA 1978) ("While the language 'commercial, industrial or business places' is not defective, obscure, or insensible, it does consistently admit of two different interpretations; one encompassing the planned development and one not encompassing the planned development."); Lost Tree Vill. Corp., 805 So. 2d at 26 (discussing latent ambiguity with regard to survey and placement of the property in a location different than that intended by the parties).

The language of the deed at issue here applies to only one subject: all lands, regardless of whether they are upland or submerged. None of the extrinsic evidence presented by BayEsplanade renders the phrase "all lands" equivocal. BayEsplanade presented no evidence that the phrase "all lands" means something less or more limited than what it says, such that it means only some of all lands. See Japanese Gardens Mobile Estates, 261 So. 2d at 196 (stating that it is impermissible to create an ambiguity through extrinsic evidence where one otherwise does not exist). As a result, while the trial court may have properly considered parol evidence to determine whether the claimed latent ambiguity exists, the court incorrectly determined that the phrase "all lands" is ambiguous and therefore erred in admitting the parol evidence to construe it.

Had the deed conveyed Parcel 1 together with "lands eastward to the Channel," we might have concluded that the deed contains a latent ambiguity. Cf. Dade City, 290 So. 2d at 531 (concluding that "all roads" is unambiguous but stating that "if the question to be answered by parol is whether a given piece of land described as a road in a written instrument is, in fact, being used as a 'road,' such evidence would of course be admissible to establish such fact"). But the singular qualification on the

conveyance of the lands eastward to the Channel of Clearwater Harbor in 1934 deed was that it conveys *all* such lands. Parol evidence was inadmissible to establish that the phrase "all lands" really means "all lands except the submerged lands." See id.; see also State v. Good Times, Ltd., No. E2007-1172-COA-R3-CV, 2008 WL 4334894, at *4 (Tenn. Ct. App. Sept. 23, 2008) (stating, in the context of deed interpretation, that "[a]ll means all and not some, or a part, or a portion, or a few"). Moreover, giving "all lands Eastward to the Channel" the meaning that BayEsplanade suggests would render the word "all" meaningless. And "[w]here only one construction will give full effect to all of the words of the instrument, it should be followed." Thrasher, 858 So. 2d at 1176 (citing Loveland v. CSX Transp., Inc., 622 So. 2d 1120, 1121 (Fla. 3d DCA 1993)).

We hold that the 1934 deed conveying "all lands . . . to the Channel of Clearwater Harbor" to the City of Clearwater unambiguously conveyed all lands, including the submerged land within the boundaries described in the deed. Accordingly, we reverse the order granting final summary judgment quieting title in favor of BayEsplanade and reverse and remand with instructions to enter final summary judgment quieting title in favor of the City of Clearwater.

Reversed and remanded with instructions.


NORTHCUTT and MORRIS, JJ., Concur.